**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Kevin WILLIAMS, aka Marcus Kevin**
**Oliver, Defendant–Appellant.**

**No. 89–1174.**

United States Court of Appeals,
Tenth Circuit.

Nov. 26, 1990.

Rehearing Denied Jan. 8, 1991.

Peter R. Bornstein of Berenbaum & Weinshienk, P.C., Denver, Colo., for defendant-appellant.

John M. Hutchins, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., and Kathryn Meyer, Michael P. Carey, and Bernard E. Hobson, Asst. U.S. Attys., on briefs), Denver, Colo., for plaintiff-appellee.

Before SEYMOUR and ANDERSON, Circuit Judges, and COOK,* District Judge.

SEYMOUR, Circuit Judge.

Appellant Kevin Williams appeals from the district court's judgment denying his motion to withdraw his guilty plea to a violation of 21 U.S.C. § 846 (1988). Williams contends he entered into his plea involuntarily. He also appeals from the district court's determination of his sen-

---

* The Honorable H. Dale Cook of the United States District Court for the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

tence under the Sentencing Guidelines. We affirm.

### I.

A federal grand jury indicted Williams for possession with intent to distribute in excess of 500 grams of cocaine and a conspiracy to do the same in violation of 21 U.S.C. § 841(a)(1) and § 846. Plea negotiations ensued and the Government and Williams agreed that Williams would plead guilty to a conspiracy charge involving approximately two kilograms of cocaine in exchange for the Government's dismissal of the substantive count and a binding recommendation of a sentence of sixty months pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure.

In negotiating the plea, the attorneys had met for several hours to discuss sentencing. They calculated what they believed the sentence range would be under the Sentencing Guidelines. Both sides agreed that the offense severity rating would be 24. Williams previously had been convicted of: shoplifting, larceny, malicious destruction of property, and domestic violence battery. After reviewing Williams' criminal record, the attorneys noted in the plea agreement only two prior offenses they considered relevant for purposes of sentencing: the domestic violence charge and one unarmed felony charge presumably for the larceny conviction. Based on these prior offenses, the attorneys calculated that Williams had no more than three criminal history points, which placed him in criminal history category II with a sentencing range of fifty-seven to seventy-one months. The prosecutor agreed to recommend a sixty-month sentence. After the attorneys had advised Williams of their preliminary calculations and the sentence recommendation, he agreed to plead guilty to the conspiracy count.

Williams and the Government advised the district court that Williams sought to enter a conditional guilty plea based on the parties' binding plea agreement. The court stated that it could not be bound by the parties' sentencing computations and recommendation and that it therefore had to reject the plea agreement and the conditional plea.[1]

The parties had anticipated the court would reject the conditional plea. They submitted an alternative plea agreement in which Williams stated that he desired to enter an unconditional guilty plea. The conditional and unconditional agreements were substantively identical except the latter agreement included the Government's *non* binding recommendation that the defendant be sentenced to a sixty-month prison term. The sixty-month term was based on the parties' earlier understanding that Williams was within the fifty-seven to seventy-one month guideline range because he

---

1. In rejecting the conditional plea, the court stated:

> "The Court will not be bound by your plea agreement. The Court will not accept the conditional plea of guilty. The only plea the Court will accept is an unconditional plea of guilty, absolute plea of guilty. I will carefully consider any agreement that you have, or stipulation, but the Court will not be bound by it. The Court's not of a mind to have the defendant proceed with the presentence report because it could take four or five weeks and at that time should the Court find something there that might concern the Court or that the Court might want to go above 60 months, the Court is bound by it. The Court rejects the plea and we start all over. But with the trial six weeks later, the Court doesn't think necessarily that the Court should be bound by any such plea, even at this time. You are directing the Court to find 60 months. You are usurping the discretion of the Court. It may very well be that the Court would go along with 60 months, but I would doubt that unless this is an absolute, unequivocal plea of guilty without any reservations or withdrawals of plea.

> "I would like to point out, though, that I will carefully consider what your stipulation is. And I feel that that should be carefully considered by the Court. However, the Court will not be bound by it. The only thing the Court can tell the defendant that he will be sentenced within the applicable sentencing guidelines, this is a guideline case, and within the jurisdictional limits of the Court.

> "Mr. Hobson, do you understand the Court's observations, please?

> "MR. HOBSON: I do, Your Honor, and I do appreciate the Court's observations with regard to deference, and I understand the Court's opinion with regard to discretion as well, Your Honor."

Rec., vol. II, at 6–7.

had a base offense level of 24 and a criminal history category of II.

The terms of the plea agreement reflected its tentative nature. The parties expressly stated that the stipulated facts underlying the criminal history category determination and the Government's subsequent recommendation were preliminary:

"The parties understand that the stipulation regarding criminal history of the defendant is tentative, and that the defendant is in a better position to know the relevant facts than is the Government. The criminal history category is more completely and accurately determined by the Probation Department and additional facts regarding the criminal history can greatly affect the final guideline range. Nevertheless, what is known of the defendant's criminal history is as follows:

"Mr. Williams is believed to have a misdemeanor conviction for a domestic disturbance and/or altercation in Aurora, Colorado within the past year. Details of the incident are uncertain, as are details of the adjudication thereof; however, the offense has been tentatively calculated into the criminal history guideline work sheet formula, as has a 1978 conviction for unarmed felony assault/robbery for which the defendant apparently only received a thirty (30) day sentence. Based on that information, if no other information were discovered, the defendant's criminal history category would be II."

Rec., vol. I, doc. 4 at 3. The parties acknowledged that the court had the power, regardless of the plea agreement, to make its own findings of fact:

"The Government and the defendant are aware that the guideline range(s) resulting from these stipulations are not binding on the Court, and the Court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and factors which are relevant to sentencing, accepting or rejecting the parties' positions herein."

*Id.* at 2.

Before the court accepted the guilty plea, it clearly stated that it would not be bound by the Government's sentencing recommendation and would have to consider it in conjunction with the Presentence Report (PSR):

"I cannot enlarge on what I said before. I will carefully consider [the recommendation], I will give deference to it, but I will not be bound by it.... But I'm not going to do it in a vacuum, I will have to have a presentence report."

Rec., vol. II, at 8.

The defendant signified his understanding of the court's position:

"THE COURT: Do you understand I'm not bound by the 60–month agreement, do you understand that, please? The agreement between the lawyers, I'm not bound by that, other than I will consider it, do you understand that, please?

"MR. WILLIAMS: But you will consider it.

"THE COURT: I will carefully consider it.

"MR. WILLIAMS: Yes.

"THE COURT: But I'm not limited to that?

"MR. WILLIAMS: Yes.

"THE COURT: I'm not restricted to that, I will consider everything, but I will consider this, also, the attorneys feel that that's proper, but it's up to me to determine if it's proper or not, not the lawyers, do you understand that?

"MR. WILLIAMS: Yes."

*Id.* at 16–17.

The court also informed the defendant of the possible consequences of his plea. The court told Williams his potential maximum sentence. The court also informed him that his sentence would be computed under the guidelines in view of the probation department's report and that he would be unable to withdraw his plea once he entered it.

"THE COURT: Do you understand the potential penalty is 40 years in a penal institution and a fine of not more than $2 million, or both, plus a $50.00 assessment, do you understand that, please?

"MR. WILLIAMS: Yes, I do.

"THE COURT: Do you understand that the Court will consider carefully the recommendation of the government that a 60–month sentence would be appropriate but the Court will not make any commitment what the sentence will be other than I will carefully consider it, do you understand that, please?

"MR. WILLIAMS: Yes.

"THE COURT: Do you understand the Court will not commit itself as to what the Court will do in regard to the sentencing guidelines other than after it's computed by the probation office, the respective attorneys and you will have the opportunity to review it, if you don't agree with it you may file pleadings in that regard, do you understand that, please?

"MR. WILLIAMS: Yes.

*Id.* at 11–12.

The court continued:

"Do you understand further *if you plead guilty, and I accept your plea of guilty, you will not be allowed to change your plea in the future,* do you understand that, please?

"MR. WILLIAMS: YES.

"THE COURT: Pardon me, please.

"You cannot take an appeal to the next highest court except as it be under the sentencing guidelines, do you understand that, please?

"MR. WILLIAMS: Yes.

"THE COURT: *But you cannot withdraw your plea,* you will not be allowed to withdraw your plea of guilty, do you understand that, please?

"MR. WILLIAMS: Yes."

*Id.* at 14–15 (emphasis added).

The district court accepted Williams' unconditional plea and subsequently sentenced him according to the probation department's PSR, which contained calculations different from those of the attorneys' embodied in the plea agreement. The probation department calculated that Williams was within criminal history category III, rather than category II. The PSR assessed three criminal history points for Williams' domestic violence violation, one point for the offense and two additional points be-

cause he committed the offense during probation. The probation department also assessed a criminal history point for Williams' 1978 malicious destruction of property conviction, and one for the larceny conviction. Thus, according to the PSR, Williams had a total of five criminal history points, placing him in criminal history category III.

The district court reduced the total offense level from 26 to 24 for acceptance of responsibility and adopted the probation department's findings that placed Williams in criminal history category III. The resulting guideline range was sixty-three to seventy-eight months. The court imposed a seventy-eight month sentence for the conspiracy count and dismissed the remaining count. Subsequent to sentencing, Williams filed a Motion to Vacate Plea, which the court implicitly denied by entering judgment, including the sentence, under the Sentencing Reform Act.

## II.

Two alleged errors are the basis of Williams' appeal. First, Williams maintains that he should have been permitted to withdraw his guilty plea. He claims it was involuntarily entered because he believed his sentencing range would be between 57 and 71 months as calculated by his and the Government's attorney. Williams also contends that the sentencing court erred in finding that he had five criminal history points, placing him in category III. He argues the correct category was category II as stipulated in his agreement with the Government. We consider these arguments in turn.

### A.

A defendant may withdraw a plea that has been entered into involuntarily. *McCarthy v. United States*, 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969). Whether a plea is voluntary is a question of federal law subject to *de novo* review. *Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir.1989). In *Brady v. United States*, 397 U.S. 742, 90 S.Ct.

1463, 25 L.Ed.2d 747 (1970), the Supreme Court set out the standard for determining the voluntariness of the guilty plea:

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or' perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.,* bribes)."

*Id.* at 755, 90 S.Ct. at 1472 (citation omitted). Therefore, to determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea. *See McCarthy,* 394 U.S. at 464, 89 S.Ct. at 1169–70.

■ Both the attorneys and the court have a duty to apprise the defendant of the consequences of the plea and ensure that it is voluntary. If these duties are not discharged, the defendant is not "fully aware" of the consequences of the plea and it is therefore involuntary. The court's duties are delineated by Rule 11(c) of the Federal Rules of Criminal Procedure. With respect to advising the defendant as to his potential sentence in a guidelines case, the court's obligation under Rule 11 is to advise the defendant of the mandatory minimum and maximum penalties for the crime committed and that the guidelines will govern sentencing. *See United States v. Rhodes,* 913 F.2d 839 (10th Cir.1990); *United States v. Turner,* 881 F.2d 684, 687 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); *see also United States v. Fernandez,* 877 F.2d 1138, 1142–43 (2d Cir.1989) (under Rule 11 district court must advise defendant of maximum possible penalty).

■ When the court accepts a guilty plea, it may expressly retain the power to determine relevant facts bearing on sentencing under the Guidelines, notwithstanding the parties' stipulations of facts. *See United States v. Rutter,* 897 F.2d 1558, 1564–65 (10th Cir.), *cert. denied,* — U.S.

—, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Richardson,* 901 F.2d 867, 869 (10th Cir.1990). If neither the plea agreement nor the court has guaranteed the defendant that the plea agreement stipulations are binding, a defendant cannot claim undue surprise or that the plea is rendered involuntary when the court exercises this power. *See United States v. Stephens,* 906 F.2d 251, 254 (6th Cir.1990).

■ An attorney has more limited duties to the defendant, but she can potentially nullify a plea agreement if she materially misinforms the defendant of the consequences of the plea or the court's probable disposition. *Laycock,* 880 F.2d at 1186. An erroneous sentence estimate does not necessarily render a plea involuntary. *Id.; United States v. Estrada,* 849 F.2d 1304, 1306 (10th Cir.1988); *United States v. Sweeney,* 878 F.2d 68, 70–71 (2d Cir.1989). In order for the plea to be held invalid, the defendant must show the plea was a product of material misrepresentations. *Laycock,* 880 F.2d at 1186. Thus, a preliminary sentence calculation must constitute a material misrepresentation, and the defendant must show he relied thereon. *See Worthen v. Meachum,* 842 F.2d 1179, 1184 (10th Cir.1988).

In *Stephens,* the attorney's inaccurate sentence estimate did not render his client's guilty plea involuntary. The court held that although the sentence estimate was erroneous, the defendant was still "fully aware of the consequences of his plea." 906 F.2d at 254. The court noted that the defendant had disclaimed reliance on his attorney's sentence estimate because he "acknowledged his understanding that any prediction of the sentence under the Guidelines would not be binding on the court...." *Id.* at 253.

■ Williams has not shown that the probable consequences of his guilty plea were materially misrepresented by the court or the attorneys. He argues that the court and the Government represented that he would be sentenced within the range calculated by the attorneys in the absence of new facts revealed by the PSR. According to Williams, when the court sentenced

him outside of the stipulated range he was subjected to a consequence he did not anticipate. Therefore, Williams argues, he tendered his guilty plea involuntarily.

Williams' argument is contrary to the record. The district court repeatedly advised him it would not be bound by the parties' sentencing recommendation. Specifically, at the plea hearing, the court advised Williams it would not accept a conditional plea because it needed to retain its sentencing discretion until it received the PSR. The court informed Williams of his potential maximum sentence and only promised him that he would be sentenced within the *applicable* guideline range. It did not specify that Williams would be sentenced within a stipulated range. It pointed out that it would consider the PSR before making its decision. After the court had made it clear it refused to be bound by the parties' sentencing recommendations, Williams elected to proceed with an unconditional guilty plea.

The defendant acknowledged he was aware that the district court was not bound to impose the stipulated sentence. He stated in court that his plea was not due to threats or promises by anyone of leniency or a light sentence. He stated he was pleading guilty because he was guilty. In the signed Plea Agreement and Stipulation of Facts, the parties acknowledged that the court was "free ... to reach its own findings of facts and factors which are relevant to sentencing." Rec., vol. I, doc. 4 at 2. In his signed statement, Williams acknowledged that: "I understand that the judge can make no decision as to what the sentence will be until the presentence report has been received and reviewed by the judge." *Id.* at 6. Thus, contrary to Williams' claims, the record shows that Williams' plea was voluntary because it was made with the knowledge that the sentencing recommendation was nonbinding. Williams understood the "actual value of any commitments made to him by the court, prosecutor or his own counsel" regarding his sentence. *Brady,* 397 U.S. at 755, 90 S.Ct. at 1472 (citation omitted).

Williams contends his plea should nonetheless be withdrawn as was the defendant's in *United States v. Loman,* 1 Fed. Sent.R. 290, 1988 WL 112538 (W.D.Mo. 1988). However, in *Loman,* the attorneys and the probation office shared in the computation error. In this case, to the contrary, the probation office did not ratify the attorneys' calculations. Furthermore, we note that the imposed sentence of seventy-eight months is reasonably close to the maximum sentence of seventy-one months anticipated by the plea agreement. We are not inclined to broadly extend the application of *Loman* to these facts. *See United States v. Bennett,* 716 F.Supp. 1137, 1146 (N.D.Ind.1989), *aff'd,* 907 F.2d 152 (7th Cir. 1990) (declining to follow *Loman,* as to one of the co-defendants, where the sentence imposed was "clearly within the expectancy created by the plea agreement").

### B.

Williams also argues that the district court improperly computed his sentence under the guidelines. He alleges two errors in the district court's calculation of his criminal history points.

■ First, Williams alleges the court erred when it computed three criminal history points for his 1988 conviction and sentence for domestic violence. We disagree. The Sentencing Guidelines directed the court to count one criminal history point for Williams' domestic violence crime. *See* United States Sentencing Comm'n Guidelines Manual § 4A1.1(c) (1989) [hereinafter Guidelines]. Section 4A1.2(c)(1) excludes some local ordinance violations, but not those for which, as here, a probation term of at least one year was imposed. No other exclusions under § 4A1.1(c) apply to Williams' 1988 domestic violence conviction. The court correctly assessed two additional points because the defendant was on probation when he committed the offense. *See* Guidelines § 4A1.1(d). We find no error in the computation of three criminal history points for the domestic violence conviction.

■ Second, Williams contends that he erroneously received one criminal history point for the October 1978 conviction for

malicious destruction of property. He argues that because the conviction took place over ten years from the November 5, 1988 commission of the offense of conviction, it should have been excluded from his criminal history computation pursuant to § 4A1.2(e)(2) (includes prior sentences imposed within ten years of commencement of instant offense). The Government asserts that since the prior sentence was modified to probation on November 15, 1978, the conviction was within the ten-year limit. We need not decide this issue because even if the 1978 sentence were outside the ten-year limitation, the resulting guideline sentence range would have been the same since criminal history category III includes criminal history points ranging from four to six. Eliminating the one point alloted for this conviction would still give Williams four criminal history points. *See* Part I, *supra* at 1455. Therefore, an error, if any, was harmless. *See United States v. Lopez–Cavasos*, 915 F.2d 474, 476 (9th Cir. 1990) (court will not resolve criminal history category disputes where the same category would have resulted under either contested calculation).

In consideration of the foregoing, we AFFIRM the denial of Williams' Motion to Vacate Plea and the district court's sentence.