**UNITED STATES of America, Appellee,**

v.

**Hector De ALBA PAGAN,**
**Defendant, Appellant.**

No. 93–2018.

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1994.

Decided Aug. 26, 1994.

Jorge L. Arroyo, San Juan, PR, by appointment of the Court, for appellant.

Jose A. Quiles–Espinosa, Sr. Litigation Counsel, Hato Rey, PR, with whom Guillermo Gil, U.S. Atty., Washington, DC, and Rosa Emilia Rodriguez–Velez, Asst. U.S. Atty., Hato Rey, PR, were on brief, for U.S.

Before SELYA, BOUDIN and STAHL, Circuit Judges.

SELYA, Circuit Judge.

On March 22, 1993, defendant-appellant Hector De Alba Pagan pled guilty to five counts of an indictment charging him, and twenty-three other persons, with various drug-trafficking offenses. On August 5, 1993, the district court, after first denying defendant's *pro se* motion to withdraw his earlier plea,[1] sentenced him to a lengthy prison term. This appeal followed.

Defendant makes several points. Distilled, these points reduce to three broad issues. We address those issues *seriatim.*

## I.

### Plea Withdrawal

Defendant contends that the district court erred in refusing to allow him to

---

1. Defendant filed his motion to withdraw *pro se,* although, at the time, he was represented by counsel. In the same motion, he asked the court to discharge his lawyer and appoint a successor. The court denied this request as well. On appeal, defendant is represented by a newly appointed attorney.

withdraw his guilty plea. We review a district court's decision to grant or deny a request to withdraw a guilty plea solely for abuse of discretion. *See United States v. Parrilla–Tirado*, 22 F.3d 368, 371 (1st Cir. 1994); *United States v. Doyle*, 981 F.2d 591, 594 (1st Cir.1992); *United States v. Pellerito*, 878 F.2d 1535, 1538 (1st Cir.1989). Applying that standard, we discern no error.

■ It is settled that a motion to withdraw a guilty plea, made before sentencing, can be granted "only upon an affirmative showing of a 'fair and just reason.' " *Parrilla–Tirado*, 22 F.3d at 371 (quoting Fed. R.Crim.P. 32(d)). The burden of persuasion rests with the defendant. *See id.* In determining whether this burden has been carried, an inquiring court must consider the totality of the circumstances, focusing especially on four factors, namely, (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether the defendant's plea realistically may be characterized as legally suspect, say, because it was involuntary or otherwise in derogation of the requirements imposed by Fed.R.Crim.P. 11. *See id.* at 371; *Doyle*, 981 F.2d at 594; *Pellerito*, 878 F.2d at 1537. If, after due consideration, the defendant appears to have the better of this assessment, the court must then mull an additional factor: prejudice to the government. *See Parrilla–Tirado*, 22 F.3d at 371; *United States v. Kobrosky*, 711 F.2d 449, 455 (1st Cir.1983). Here, we do not reach the question of prejudice, for the defendant's claim, when measured by virtually every pertinent test, fails at the earlier stage.

We need not wax longiloquent. Defendant asserts three reasons for seeking to withdraw his plea, but two of them are hopelessly infirm and do not warrant discussion. His quest rises or falls, therefore, on his claim that, when he pleaded guilty, he "did not

understand that, as a consequence of his plea, he would be sentenced [based partly] on relevant conduct that went beyond that which he admitted to in his statements to the court [at the change-of-plea hearing]." Appellant's Brief at 16–17.

On this chiaroscuro record, we cannot find that the lower court erred in refusing to credit this professed reason. After all, the court made it very clear to defendant that he would be sentenced in accordance with the provisions of the sentencing guidelines, informed him of the maximum possible punishment, asked him about promises or assurances beyond those limned in the plea agreement (defendant said there were none), and made certain that defendant was told quite pointedly that the matter of relevant conduct would be determined at sentencing.

■ To be sure, defendant claims to have had a subjective understanding to the contrary.[2] But where, as here, a court expressly retains the power to determine relevant facts bearing on sentencing under the guidelines, "a defendant cannot claim ... that the plea is rendered involuntary when the court exercises this power." *United States v. Williams*, 919 F.2d 1451, 1456 (10th Cir.1990), *cert. denied*, 499 U.S. 968, 111 S.Ct. 1604, 113 L.Ed.2d 667 (1991); *accord United States v. Stephens*, 906 F.2d 251, 254 (6th Cir.1990). In short, a defendant's lament that he misjudged the consequences of his guilty plea, without more, is not a fair and just reason for setting the plea aside. By the same token, the fact that a defendant misapprehends the likely guideline sentencing range does not constitute a fair and just reason for withdrawing a guilty plea. *See Williams*, 919 F.2d at 1456; *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir.1990); *Stephens*, 906 F.2d at 253; *United States v. Jones*, 905 F.2d 867, 868 (5th Cir.1990); *United States v. Sweeney*, 878 F.2d 68, 69–71 (2nd Cir.1989).[3]

---

**2.** Defendant asserts that a principal reason for this subjective belief lay in his lawyer's statements to him, abetted by his lawyer's failure to tell him of comments made by the judge at sidebar. These circumstances are more directly pertinent to the claim of ineffective assistance, *see infra* Part II.

**3.** Here, no one supplied the defendant with an estimate of the guideline sentencing range during the change-of-plea hearing. We note in passing, however, that courts have held that even the furnishing of an *incorrect* estimate to defendant by his own counsel would not afford a basis for permitting him to withdraw his earlier plea.

Although the absence of a plausible reason itself often constitutes an insurmountable obstacle to a defendant's plea-withdrawal effort, we note that, here, most of the remaining factors involved in the *Parrilla–Tirado* test also counsel in favor of upholding the district court's ruling. Beyond noting two vital pieces of information—that defendant has yet to assert his innocence, and that we have been unable to find any substantial defect in the Rule 11 proceedings—we think that it would serve no useful purpose to cite book and verse. It suffices to say that the district court did not abuse its discretion in denying defendant's plea-withdrawal motion.

## II.

### Ineffective Assistance

■■■ The Sixth Amendment requires that persons accused of crimes shall receive the benefit of counsel for their defense. *See* U.S. Const., Amend. VI. The defendant maintains that he was denied this boon because his trial counsel acted both irresponsibly and below an acceptable standard of proficiency. We do not think this plaint is ripe for appellate review.

"We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." *United States v. Mala,* 7 F.3d 1058, 1063 (1st Cir. 1993) (collecting cases), *cert. denied,* — U.S. ——, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994). Here, defendant's complaint anent trial counsel's performance is utterly factbound, and cannot intelligently be evaluated on the sparse record that is now before us.

Nonetheless, the rule reiterated in *Mala* should be construed in a practical, commonsense fashion. The chief reason that we do not undertake first-instance review of prototypical ineffective assistance claims is prudential in nature. As we said in *Mala:*

Since claims of ineffective assistance involve a binary analysis—the defendant must show, first, that counsel's performance was constitutionally deficient and, second, that the deficient performance prejudiced the defense, *see Strickland v. Washington,* 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674] (1984)—such claims typically require the resolution of factual issues that cannot efficaciously be addressed in the first instance by an appellate tribunal. In addition, the trial judge, by reason of his familiarity with the case, is usually in the best position to assess both the quality of the legal representation afforded to the defendant in the district court and the impact of any shortfall in that representation. Under ideal circumstances, the court of appeals should have the benefit of this evaluation; elsewise, the court, in effect, may be playing blindman's buff.

*Id.* (some internal citations omitted).

Be that as it may, the case at bar possesses a procedural wrinkle: it must, in all events, be remanded to the district court for further proceedings, *see infra* Part III. That circumstance, coupled with the fact that the claim of ineffective assistance is at least colorable, impels us to direct the district court, on remand, to hold an evidentiary hearing in advance of resentencing to determine whether defendant's conviction ought to be set aside on Sixth Amendment grounds. *Cf., e.g., United States v. Rodriguez Rodriguez,* 929 F.2d 747, 753 (1st Cir.1991) (per curiam) (directing district court on remand to conduct an inquiry into defendant's allegations of misconduct by counsel); *Mack v. Smith,* 659 F.2d 23, 26 (5th Cir.1981) (per curiam) (remanding for evidentiary hearing to determine if failure to file a timely appeal resulted from ineffectiveness of counsel). Of course, we take no view of the merits of defendant's Sixth Amendment claim.

## III.

### Sentencing

■■■ The defendant asserts a salmagundi of grounds in support of his contention that the district court erred in the imposition of sentence. We agree that the sentencing proceedings were irremediably flawed and must be conducted afresh.

*See, e.g., Williams,* 919 F.2d at 1456; *Stephens,* 906 F.2d at 253.

The right of allocation affords a criminal defendant the opportunity to make a final plea to the judge on his own behalf prior to sentencing. *See United States v. Behrens,* 375 U.S. 162, 165, 84 S.Ct. 295, 296–97, 11 L.Ed.2d 224 (1963). Ancient in law, allocution is both a rite and a right. It is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances. *See United States v. Barnes,* 948 F.2d 325, 328 (7th Cir.1991). Furthermore, allocution "has value in terms of maximizing the perceived equity of the process." *Id.* (citation and internal quotation marks omitted).

While it can be argued that the right of allocution has lost some of its stature since the advent of the sentencing guidelines—the guidelines, we might add, have been blamed for much worse—allocution remains deeply embedded in our criminal jurisprudence. Indeed, the right is incorporated in the Criminal Rules, which provide in pertinent part that, prior to imposing a sentence, the judge shall "address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed.R.Crim.P. 32(a)(1)(C). If the defendant responds affirmatively to this invitation, he must then be permitted to speak. *See, e.g., Barnes,* 948 F.2d at 331.

In this case, the court below did not specifically address the defendant and make the inquiry that the rule requires. Despite this apparent failure to heed the rule's command, the government argues that the omission, in itself, is not dispositive. Rather, the government strives to persuade us that the totality of the circumstances surrounding the sentencing hearing, including some specific interaction between the defendant and the judge, constituted substantial compliance with the rule. We are not convinced.

As we have previously observed, allocution continues to play a salient role in criminal cases. Thus, while we do not attach talismanic significance to any particular string of

words, a defendant must at least be accorded the functional equivalent of the right. And, moreover, functional equivalency should not lightly be assumed. Though there may be cases in which a defendant, despite the absence of the focused inquiry that the language of the rule requires, can be said to have received its functional equivalent, such cases will be few and far between. Doubts should be resolved in the defendant's favor.

To achieve functional equivalency (or, put another way, substantial compliance with the imperative of Rule 32(a)(1)(C)), it is not enough that the sentencing court addresses a defendant on a particular issue, *see, e.g., United States v. Walker,* 896 F.2d 295, 300–01 (8th Cir.1990), affords counsel the opportunity to speak, *see, e.g., United States v. Posner,* 868 F.2d 720, 724 (5th Cir.1989), or hears the defendant's specific objections to the presentence report, *see, e.g., United States v. Phillips,* 936 F.2d 1252, 1255–56 (11th Cir.1991). Rather, the court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence. *See Green v. United States,* 365 U.S. 301, 304–05, 81 S.Ct. 653, 655–56, 5 L.Ed.2d 670 (1961).

Viewed against this backdrop, we cannot find functional equivalency or substantial compliance here. Although the defendant did engage in discussion of specific points at the disposition hearing, the court did not, either explicitly or by fair implication, invite him to speak on a broader, more wide-ranging level. Nor does the record furnish any other basis for a finding that defendant knew of his right to allocute. In this case, then, the court's failure to comply with Rule 32(a)(1)(C) constituted reversible error.[4]

We say "reversible" because, in this type of situation, we cannot dismiss the error as harmless. As early as 1689, the common law acknowledged that a court's failure to

---

4. Under Rule 32(a)(1)(C), it is the court's obligation to invite the defendant's remarks. Thus, a defendant ordinarily will not be held to have waived the right of allocution merely because he

did not seek to address the court. *See Barnes,* 948 F.2d at 330–31; *see also Walker,* 896 F.2d at 300.

invite a defendant to speak before sentencing required reversal. *See Barnes,* 948 F.2d at 328 (citing *Anonymous,* 3 Mod. 265, 266, 87 Eng.Rep. 175 (K.B. 1689)). This axiom has survived the passage of time. It is settled that a failure to comply with the mandate of Rule 32(a)(1)(C) ordinarily requires vacation of the sentence imposed without a concomitant inquiry into prejudice. *See United States v. Maldonado,* 996 F.2d 598, 599 (2d Cir.1993); *Barnes,* 948 F.2d at 332; *Phillips,* 936 F.2d at 1256; *Walker,* 896 F.2d at 301; *Posner,* 868 F.2d at 724; *United States v. Buckley,* 847 F.2d 991, 1002 (1st Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Navarro–Flores,* 628 F.2d 1178, 1184 (9th Cir.1980); *cf. United States v. Miller,* 849 F.2d 896, 897–98 (4th Cir.1988) (remanding for failure to meet strictures of Fed.R.Crim.P. 32(a)(1)(A) and (C)). This is so precisely because the impact of the omission on a discretionary decision is usually enormously difficult to ascertain.[5]

■■■ In line with this virtually unbroken skein of authorities, we hold, that if the trial court fails to afford a defendant either the right of allocution conferred by Rule 32(a)(1)(C) or its functional equivalent, vacation of the ensuing sentence must follow automatically. So it is here.[6]

*We affirm the district court's denial of defendant's plea-withdrawal motion, but vacate defendant's sentence and remand for further proceedings as described herein. So ordered.*

---

**5.** This is not necessarily so, of course, when the sentence is the minimum possible. Thus, the Ninth Circuit has undertaken harmless-error analysis in certain cases in which a defendant has been denied his right to allocution, limited, however, to instances in which a sentence is "already as short as it could possibly be under the Guidelines." *United States v. Carper,* 24 F.3d 1157, 1162 (9th Cir.1994); *see also United States v. Ortega–Lopez,* 988 F.2d 70, 72–73 (9th Cir. 1993). The case at hand is not such a case.

**6.** Because further proceedings are required, we do not reach the remaining sentence-related issues raised on appeal. We assume that, at the appropriate juncture, the district court will traverse that ground and make new findings on an augmented record.