43 F.3d 1484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronnie Darnell JOHNSON, Defendant-Appellant.
 No. 94-6123.
 United States Court of Appeals, Tenth Circuit.
 Dec. 14, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.[2]
 
 
 1
 Defendant Ronnie Darnell Johnson appeals contending he did not knowingly and voluntarily enter his plea of guilty. We have jurisdiction pursuant to 28 U.S.C. 1291 and we affirm.
 
 
 2
 In September 1993, Defendant was stopped for speeding in Arizona. During the stop, the police found 495 grams of powder cocaine and a handgun in the car. Defendant was subsequently charged in November 1993 in three counts of a four-count indictment with conspiracy to possess with intent to distribute cocaine powder and cocaine base, 21 U.S.C. 841(a)(1), 846, traveling in interstate commerce with intent to conduct illegal activity, 18 U.S.C.1952(a)(3), and possessing a firearm during and in relation to a drug trafficking crime, 18 U.S.C. 924(c)(1).
 
 
 3
 With a suppression hearing pending in January 1994, Defendant entered into plea negotiations with the government. The government offered to dismiss the indictment if Defendant would plead guilty to two counts of traveling in interstate commerce with intent to conduct illegal activity, 18 U.S.C.1952(a)(3), which the government would later charge by information.
 
 
 4
 Defendant initially wanted to reject the government's offer. However, after further consultation with his attorney, Mr. Mack Martin, Defendant changed his mind and indicated he wanted to accept the government's plea offer. However, Defendant was reluctant to do so before seeing the plea agreement in writing. Because there was no formal plea agreement at that time from the government, Mr. Martin hand wrote on a piece of paper the terms that he understood would compose the government's formal plea agreement. The handwritten plea stated, in pertinent part: "2 counts of interstate travel to conduct illegal act[ivity] ... Maximum possible sentence is ten (10) years." The handwritten plea was signed by Defendant and dated January 21, 1994. Supp. Vol. I, Doc. 57, exh. 3.
 
 
 5
 Four days later, on January 25, 1994, Defendant signed a formal plea agreement prepared by the government. The formal plea agreement specified Defendant was pleading guilty to two counts of traveling in interstate commerce with intent to conduct illegal activity, 18 U.S.C.1952(a)(3), and stated Defendant could receive a maximum penalty of "not more than five (5) years imprisonment ... per count."
 
 
 6
 On February 18, 1994, the district court held a plea hearing. At the hearing, the court asked the government to "state the charge and the maximum punishment" provided for under the plea agreement. The government responded:
 
 
 7
 Your honor, Mr. Johnson has agreed to plead guilty to a two-count information, both counts charges [sic] a violation of Title 18, United States Code, Section 1952(a)(3) in that he traveled in interstate commerce from Oklahoma City to Los Angelas, California, and back from Los Angeles, California to Oklahoma City for the purpose of possession with intent to distribute crack cocaine--excuse me--powder cocaine.
 
 
 8
 The penalty for both counts is not more than five years imprisonment, a fine of not more than $10,000, or an alternative fine of $250,000, or both such fine and imprisonment, as well as a $50.00 special assessment, and at least a term of three years' supervised release, and those penalties fall on each count.
 
 
 9
 Vol. II at 3. Thereafter, the court asked Defendant whether he understood the charges against him and the maximum penalties provided by law for those charges and Defendant indicated that he did. The court also asked Defendant if he understood the rights he was waiving by pleading guilty, including the right to a jury trial and Defendant indicated he did. Defendant told the court his plea of guilty was voluntary and of his own free choice. Vol. II. at 6.
 
 
 10
 However, two days after the plea hearing, Defendant sent a letter to the court and his attorney requesting that he be allowed to withdraw his guilty plea. In his letter, Defendant stated:
 
 
 11
 I want to withdraw my plea agreement because my lawyer force me into signing the plea agreement knowing that I wanted to go to trial, and when we were in the courtroom I was confused about some of the things, that is in page three that, my lawyer didn't make it clear about the "testifying in federal grand jury proceedings as necessary" and if I have any rights to a trial. I request of you to give me back my right to a trial. My lawyer said the U.S. Attorney was making him rush the plea agreement and didn't want me to go to my Suppression of Evidence and Suppression of statements. And if I go to my hearing, the plea agreement is no good. And I can go to trial.
 
 
 12
 Supp. Vol. I, Doc. 57. Nowhere in his letter did Defendant state that he did not understand the maximum penalties he could receive under the plea agreement.
 
 
 13
 Approximately two weeks later, Defendant's attorney, Mr. Martin, filed a formal motion to withdraw Defendant's plea under Fed.R.Crim.P. 32(d). See Fed.R.Crim.P. 32(d) (court may permit withdrawal of plea upon showing of fair and just reason). Mr. Martin accompanied this motion with a motion to withdraw as Defendant's counsel.[3] The motion to withdraw Defendant's plea of guilty asserted the following grounds for withdrawal: (1) Defendant had a valid pending motion to suppress; (2) Defendant had a factual basis for his defense that he was "ambitious to present to a jury;" and (3) Defendant was rushed into his decision to plead guilty, without enough time to consider all the factors. The motion did not raise as a ground for withdrawal that Defendant lacked knowledge of the maximum penalties he could receive under the plea agreement.
 
 
 14
 On March 1, 1994, the district court held a hearing to consider Defendant's motion to withdraw his plea of guilty. The court appointed Federal Public Defender Susan Otto to represent Defendant at the hearing because Mr. Martin, Defendant's attorney, was to be called as a witness. On direct examination by Ms. Otto, Defendant set forth two reasons to explain why he wanted to withdraw his plea. He first stated he was rushed into pleading guilty: "I mean, I had a suppression hearing coming up on that Tuesday and they come with the plea on Friday and said if I don't sign a plea bargain now, then it will be throwed out ... I was just rushed into it." Vol. III at 6. He also stated he did not understand he would have to cooperate with the government and testify against anyone under the plea. Id. Defendant's only statement regarding the maximum penalties he faced under the plea agreement was made in the following exchange:
 
 
 15
 Q: (By Ms. Otto) What was your understanding of the plea agreement?
 
 
 16
 A: (By Defendant) Okay. My understanding of the plea agreement was--basically I really didn't have none. I just had an understanding it was a plea of five years and it was up to the judge to determine my sentence, and I was afforded a probation that would affect my history, and that was based on what I would be sentenced on. And the other stuff was really broken down into where I couldn't fully understand it and comprehend it.
 
 
 17
 ...
 
 
 18
 Q: (By Ms. Otto) All right. And what is it exactly you thought you were going to be pleading guilty to?
 
 
 19
 A: (By Defendant) Well, I knew it was a five-year sentence, but I didn't know what to--I really didn't understand the facts that went along with it, until I thoroughly went over this and got an understanding about what was going on about the cooperation with the fellow.
 
 
 20
 ...
 
 
 21
 Q: (By the Court) Excuse me just a minute. Is the maximum punishment five years or ten years?
 
 
 22
 A: (By Ms. Otto) Your honor, I believe that he has entered a plea of guilty to two travel counts, so if the guideline range exceeds 60 months, the Court could stack those two counts. So, technically, the maximum possible punishment that he's facing is ten years.
 
 
 23
 Q: (By Ms. Otto) Did you understand that?
 
 
 24
 A: (By Defendant) No, I didn't understand that either.
 
 
 25
 Vol. III at 7-9.
 
 
 26
 In response to this exchange, Assistant United States Attorney Kim Taylor asked Defendant on cross-examination about the informal handwritten plea drafted by his attorney, which Defendant had signed January 21, 1994:
 
 
 27
 Q: (By the government) I've handed you what's been marked as Government's Exhibit No. 2, or Plaintiff's Exhibit No. 2. Would you read that for the Court?
 
 
 28
 A: (By Defendant) "Ronnie Darnell Johnson, Cr-93-239-R, two counts of interstate travel to conduct illegal activity ... Maximum possible sentence is ten years. Ronnie D. Johnson, 1-21-94."
 
 
 29
 Q: (By the government) Is that your signature?
 
 
 30
 A: (By Defendant) Yes, ma'am.
 
 
 31
 Q: (By the government) And it's dated January 21, 1994?
 
 
 32
 A: (By Defendant) Yes ma'am.
 
 
 33
 Q: (By the government) And also at the bottom it says that a formal plea agreement will be provided or drafted at a later time?
 
 
 34
 A: (By Defedant) Right.
 
 
 35
 Q: (By the government) Now this agreement that you signed on January 21st of 1994 told you that you had a maximum possible sentence of ten years?
 
 
 36
 A: (By Defendant) Uh-huh.
 
 
 37
 ...
 
 
 38
 Q: (By the government) So on January 21st of 1994, you knew that the plea that was offered to you by the government, the plea agreement, you could serve a maximum time of ten years?
 
 
 39
 A: (By Defendant) Yes, ma'am.
 
 
 40
 Vol. III at 13-14.
 
 
 41
 After Defendant stepped down, Mr. Martin was called to the stand. Mr. Martin testified on direct examination that Defendant had difficulty understanding the plea process and was "one of the most difficult clients that [he] had ever got to accept a deal." Vol. III at 38. However, during cross-examination, the following exchange took place between Mr. Martin and the court:
 
 
 42
 Q: (By the court) Excuse me just a moment. [AUSA Taylor] asked you after ... [Defendant] had signed the plea agreement and the petition to enter a plea of guilty, did--were you satisfied that he understood those documents. And then you went on to say, "Well he changed his mind." Are you satisfied he understood those after you explained them to him?
 
 
 43
 A: (By Mr. Martin) As best as he can comprehend, your Honor. And I say that, because there are terms and language in there that I think Mr. Johnson probably doesn't truly understand--you know, truly understand the full extent of what they say, but as best as he can comprehend, I think he did, yes sir.
 
 
 44
 Q: (By the court) Are you satisfied that he understood that he was pleading guilty?
 
 
 45
 A: (By Mr. Martin) Yes, sir.
 
 
 46
 Q: (By the court) And the consequences of his pleading guilty, that he'd face certain--a maximum of ten years in prison and that he would not be going to trial and various things that we go over with defendants, are you satisfied he understood all those factors?
 
 
 47
 A: (By Mr. Martin) The basic principles that you went over in the courtroom with him that day [at the plea hearing], yes sir, I am satisfied he understood.
 
 
 48
 Vol. III at 40-41.
 
 
 49
 Based on the evidence presented, the court denied Defendant's motion to withdraw his guilty plea. The court stated: "I just don't find that in this case there is a fair and just reason. I consider a plea of guilty a solemn event that a defendant enters into, and, in this case ... [t]he evidence that I've heard just indicates that the defendant just changed his mind." Vol. III at 51.
 
 
 50
 Prior to sentencing, a presentence report was prepared. Defendant filed objections to the report. These objections were ruled upon by the court and are not the subject of this appeal. The court adopted the calculations of the presentence report and sentenced Defendant to sixty months imprisonment on count one and forty-eight months imprisonment on count two and ordered the sentences to run consecutively. This appeal followed.
 
 I.
 
 51
 On appeal, Defendant argues in his second point that the court should have allowed him to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32 because he was not adequately advised that the maximum possible penalty he could receive under the plea agreement was ten years.[4] Defendant asserts the court's and counsels' failure to adequately advise him of the maximum penalties he faced constitutes a "fair and just reason" for withdrawal. See Fed.R.Crim.P. 32(d) (court may permit defendant to withdraw his guilty plea if defendant demonstrates a "fair and just reason" for withdrawal). Defendant did not make this argument in his letter to the court or in his formal motion to withdraw his guilty plea. This argument was not considered and ruled upon by the district court and we will not consider it for the first time in this appeal. United States v. Mendoza-Lopez, 7 F.3d 1483, 1485 n. 2 (10th Cir.1993), cert. denied, 114 S.Ct. 1552 (1994).
 
 II.
 
 52
 Defendant also contends for the first time in this appeal that he did not knowingly and voluntarily enter his guilty plea because the court failed to accurately advise him of the maximum possible penalty he faced under the plea agreement, in violation of Fed.R.Crim.P. 11(c)(1). Defendant requests he be allowed to withdraw his plea, or alternatively, requests resentencing in accordance with his understanding of the plea agreement to a maximum of five years imprisonment. We will consider this claim for the first time in this appeal because it asserts a constitutional error--i.e., that Defendant did not knowingly and voluntarily enter his guilty plea. See United States v. Easter, 981 F.2d 1549, 1557 (10th Cir.1992) (court may consider constitutional claim for first time on appeal), cert. denied, 113 S.Ct. 2448 (1993). We review for plain error. Id. "To constitute plain error, the deficiency must be obvious and substantial.... However, we apply the plain error rule less rigidly when reviewing a potential constitutional error." Id. (citation omitted).
 
 
 53
 "A defendant may withdraw a plea that has been entered into involuntarily." United States v. Williams, 919 F.2d 1451, 1455 (10th Cir.1990), cert. denied, 499 U.S. 968 (1991). "[T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea." Id. at 1456. The court is required to inform the defendant, inter alia, of the "maximum possible penalty provided by law" for the offense to which the defendant will plead guilty. See Fed.R.Crim.P. 11(c)(1); Williams, 919 F.2d at 1456. In this context, "maximum possible penalty provided by law" means the maximum statutory sentence provided by law for an offense. See United States v. Gomez-Cuevas, 917 F.2d 1521, 1526 (10th Cir.1990) (citing United States v. Fernandez, 877 F.2d 1138, 1143 (2d Cir.1989)).
 
 
 54
 In the instant case, the court correctly informed Defendant of the maximum statutory sentence provided by law for the offenses to which he pled guilty. At the plea hearing, the court asked the government to state the charges against Defendant and the maximum possible penalties for those charges. The government correctly informed Defendant that he faced a maximum of five years imprisonment for each of his two violations of 18 U.S.C.1952(a)(3). See 18 U.S.C.1952(a)(3) (violation carries maximum five years imprisonment). When asked whether he understood the government's explanation of the maximum penalties, Defendant said that he did. Indeed, Defendant admitted at the withdrawal of plea hearing that he knew that he faced a maximum of ten years imprisonment under the plea agreement. Vol. III at 13-14.
 
 
 55
 We conclude Defendant knowingly and voluntarily entered his plea and that the court complied with Rule 11(c)(1). Finding no plain error, we affirm.
 
 
 56
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Both parties waived oral argument. The case is therefore ordered submitted on the briefs
 
 
 [3]
 Mr. Martin's motion to withdraw as counsel was later denied by the court
 
 
 [4]
 We address Defendant's claims in reverse order