LIPEZ, Circuit Judge,
Dissenting.
Although I concur with the majority that the district court acted within its discretion by denying Pacheco’s motion for a continuance, I conclude that Pacheco was deprived of her opportunity to allocute before sentencing. I would therefore vacate the sentence and remand for a resentencing that would give her that opportunity.
The Supreme Court has emphasized both the historical provenance and the substantial importance of permitting “[the] defendant, personally, to have the opportunity to present to the court his plea in mitigation.” Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). In the words of the Seventh Circuit,
[w]ith historical roots in the common law, the opportunity to plead for mercy is another provision in a procedural body of law designed to enable our system of justice to mete out punishment in the most equitable fashion possible, to help ensure that sentencing is particularized and reflects individual circumstances.
United States v. Barnes, 948 F.2d 325, 328 (7th Cir.1991); see also United States v. Burgos-Andújar, 275 F.3d 23, 28 (1st Cir.2008) (noting “our long tradition of giving all defendants the right to directly address the court and plead for mercy”). We have .accordingly described the right of allocution as “sacrosanct.” United States v. Genao-Sánchez, 525 F.3d 67, 71 (1st Cir.2008). Therefore, “[t]he burden of complying with the right of allocution[ ] rests with the court and not the defendant,” and the court bears the responsibility of “mak[ing] sure the defendant understands that [she] has the right to say anything [she] wants before sentence is imposed.” United States v. Vasquez, 216 F.3d 456, 458-59 (5th Cir.2000).
Here, the record shows that for much of the sentencing hearing, the district court and defense counsel engaged in a contentious exchange regarding a number of issues. The majority notes the “escalating tension” between the trial judge and counsel, compounded by counsel’s confused and repetitive presentation and the trial judge’s increasing impatience with her arguments. Toward the end of the hearing, the district court’s vexation reached its peak. In response to counsel’s concern with the court “informally [telling] the client the Court is going to impose jail •time,” the trial judge said: “Wait a minute. Do you honestly think that a case involving *51 heroin should be allowed without jail time?” After this statement was interpreted for her, Pacheco asserts (and the government does not dispute) that she began weeping.[7]
This fraught dialogue culminated in the passage the majority quotes, where the district court told counsel that he had “heard [her] enough” before asking Pacheco whether she had anything she wanted to contribute. When counsel persisted, the court “ask[ed her] to shut up” before turning to Pacheco and inquiring once again whether she had anything to say.
On the basis of the exchanges between the judge and the defendant, the majority concludes that “Pacheco was personally asked a question and she immediately shook her head from side to side. Given the context, we believe the only reasonable interpretation of that action is that she had nothing to say to the court in response to its question, ‘Do you have anything to say, ma’am?’ ”
I strongly disagree with the majority’s evaluation of the context of the supposed allocution. One must look closely at the three inquiries relied upon by the majority:

First Inquiry:

THE COURT: Listen, I’ve heard you enough [referring to Pacheco’s attorney]. Anything you [meaning the defendant] want to say, ma’am?

Second Inquiry:

PLAZA: Your Honor, I ask the Court—
THE COURT: I’m asking you [referring to Pacheco’s attorney] to shut up. Anything you [meaning the defendant] want to say, ma’am? Anything?
THE DEFENDANT: (Shaking head from side to side.)

Third Inquiry:

THE COURT: Anything? [AUSA] Martin, else?
MARTIN: Nothing, Your Honor.
THE COURT: Very well.
So far as we can tell from the transcript, these exchanges occur in a matter of seconds. In the first inquiry, the court prefaces its invitation to the defendant to speak with the admonition to Plaza that he has heard enough from her. In the second inquiry, the court prefaces its invitation by literally asking her attorney to “shut up.” The defendant responds to this invitation by shaking her head from side to side. The third inquiry consists of one word from the court, “Anything?”, apparently in response to the defendant shaking her head. But it is unclear from the transcript whether this third inquiry was directed to the defendant or the prosecutor. Since it is Martin who responds “Nothing, Your Honor,” it- appears that the inquiry was directed at him.
In a formal sense, the judge invited the defendant to speak before he imposed a sentence. But it is hard to imagine a more uninviting invitation. The twenty-year old defendant, already in tears, has just heard the judge tell her attorney in rapid succession -that he has “heard you enough” and “shut up” before she shakes her head from side to side, signaling that she has nothing to say. Yet the majority says that “the only reasonable interpretation” of the defendant shaking her head “is that she had *52 nothing to say to the court in response to its question.”
To the contrary, I believe that the far more reasonable interpretation of this scenario is that the defendant, even if she did have something to say to the judge, was so intimidated by his display of anger and impatience with her attorney that she could not summon the courage to speak. The judge and the defendant did not “interact in a manner that shows clearly and convincingly that the defendant knew [she] had a right to speak on any subject of [her] choosing prior to the imposition of sentence.” United States v. De Alba Pagán, 33 F.3d 125, 129 (1st Cir.1994) (emphasis added). To the extent that there is any uncertainty about the defendant’s state of mind at this critical juncture, those “[d]oubts should be resolved in the defendant’s favor.” Id. The majority has failed to do that.
• It is all too easy for judges, enveloped in the courtroom by the authority of their office, to underestimate the impact of their demeanor and words on the parties before them. That is why judges, even when provoked by counsel, must always measure their manner and their words- carefully. That did not happen here, with serious consequences for the defendant’s right to alloeute.
As the Second Circuit has explained, the Rule on allocution “demands that each defendant be allowed .a meaningful right to express relevant mitigating information before an attentive and receptive district judge.” United States v. Li, 115 F.3d 125, 133 (2d Cir.1997). Thus, “creating] an atmosphere that obviously rendered- it difficult for [the defendant] to present an effective and potentially persuasive allocution” may result in deprivation of the right. Id.; see also Barnes, 948 F.2d at 331 (“Because the sentencing decision is a weighty responsibility, the defendant’s right to be heard must never be reduced to a formality.”); United States v. Sparrow, 673 F.2d 862, 865 (5th Cir.1982) (“Even where the judge satisfies the specifics of Rule 32, we must still assure ourselves that the compliance was not merely in form.”). Here, there was at best only formal compliance with Rule 32. In substance, however, the court’s handling of the sentencing hearing created a hostile atmosphere that was incompatible with the meaningful exercise of the defendant’s right to alloeute.
' I wish' to be clear on one final point. My dissent should not be read as a criticism of the trial judge’s conduct toward Pacheco generally. Indeed, he displayed marked solicitude toward her in other contexts, such as at the change of plea hearing, and in urging the government to offer her a downward departure. He was unquestionably sympathetic to her plight as a young mother of two, with a third child on the way. His ire was directed at counsel, not Pacheco herself. His intemperate words were brief, a momentary lapse of control. But that lapse came at an inopportune time, with serious consequences for the defendant’s right to speak to the court before sentencing.
Because I cannot agree that Pacheco was given a meaningful opportunity to allocute, I would vacate her sentence and remand so that she can be sentenced in compliance with the strictures of Rule 32(i)(4)(A)(ii). For these reasons, I respectfully dissent.

. As the majority notes, we cannot listen to the recording of the sentencing hearing, which might have given us a better feel for the atmospherics of the exchanges. But the transcript speaks for itself. To the extent that we have any doubts about the impact of the words on the page on Pacheco's right to allocuté, we must resolve them in Pacheco's favor. See United States v. De Alba Pagán, 33 F.3d 125, 129 (1st Cir.2009).