**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN MICHAEL McINTOSH,

    Defendant - Appellant.

No. 20-5089

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:19-CR-00059-JED-1)**
_____

John M. Bowlin, Bowlin & Schall LLC, Greenwood Village, Colorado, for Defendant-Appellant.

Eleanor F. Hurney, Assistant United States Attorney (Clinton J. Johnson, Acting United States Attorney, with her on the briefs), Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Defendant-Appellant John Michael McIntosh pled guilty to five counts of robbery in violation of 18 U.S.C. § 1951, plus three counts of brandishing a pistol during those five robberies in violation of 18 U.S.C. § 924(c). During the change-in-plea hearing held by the district court, however, Mr. McIntosh repeatedly expressed

doubts about whether he should plead guilty and suggested that his mental capacity was impaired. After much indecision and two off-the-record discussions with the government, he finally went forward with the plea and the district court completed its plea colloquy.

But two months after entering the plea, Mr. McIntosh filed a motion to withdraw it, contending that the plea was neither knowing nor voluntary and therefore violated his constitutional due process rights. The district court denied the motion and accepted the plea agreement at sentencing. Mr. McIntosh now appeals, arguing that the plea was constitutionally invalid in the first instance and also arguing, in the alternative, that the denial of his motion to withdraw the plea was an abuse of discretion. Exercising jurisdiction under 28 U.S.C. § 1291, we find that the district court failed to ensure the plea was knowingly and voluntarily made, and so we VACATE Mr. McIntosh's convictions and REMAND for further proceedings.

## I.    BACKGROUND

A grand jury charged Mr. McIntosh with five counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and five counts of brandishing a firearm during the robberies, in violation of 18 U.S.C. § 924(c), based on allegations that he robbed five Oklahoma convenience stores and other retail establishments at gunpoint over a period of six days in February 2019.

Before trial, at the request of defense counsel and by order of the district court, a psychologist examined Mr. McIntosh and diagnosed him with substance abuse

disorders and malingering.  The evaluator concluded that Mr. McIntosh did not meet the diagnostic criteria for any mood, depressive, or psychiatric disorder that would render him unable to understand the proceedings against him.  The district court subsequently found Mr. McIntosh competent to stand trial.

About a month before trial was scheduled to begin, Mr. McIntosh notified the district court that he intended to plead guilty pursuant to an agreement with the government.  The agreement stipulated that Mr. McIntosh would plead guilty to eight of the ten charges and be sentenced to 300 months' imprisonment, while the government would dismiss two of the brandishing counts against him.  In advance of a change-in-plea hearing, Mr. McIntosh signed the plea agreement documents, including a statement attesting that he had reviewed the entire agreement with counsel, understood all provisions, and voluntarily agreed to the deal.

But at the beginning of the district court's change-in-plea hearing on November 1, 2019, Mr. McIntosh voiced doubts about the agreement, stating:

> I just feel like—honestly I feel like that it's too much time in my opinion.  And I haven't been taking my medication because they took me off of it in David L. Moss [Criminal Justice Center].  And I just don't feel like my judgment is right, you know what I'm saying?  I just feel like—I'm all over the place.  You know, I want to take the deal, I don't want to take the deal.  And I feel like my mental state of mind isn't right to take anything right now because I don't understand, you know, what's really going on.

(R., vol. II at 16.)

The district court responded that Mr. McIntosh seemed to "need[] some other time," and asked Mr. McIntosh's counsel for their thoughts.  (Id. at 17.)  Counsel

3

replied that Mr. McIntosh had a "basic understanding" of the plea agreement and appeared to be competent, and noted that the government's plea offer was likely the best option for him. (Id. at 18.) At that point, the government offered to speak with Mr. McIntosh and his counsel off the record to explain the plea agreement in more detail. The court agreed and granted recess, during which the parties conferred.

Upon returning from recess, Mr. McIntosh told the court that he would "just take the deal." (Id. at 22.) The court proceeded to explain some of the terms of the plea agreement to him and stated, "I think what the government and the defense counsel have done is something that would be better for you." (Id. at 22.) The court then administered an extensive plea colloquy, asking Mr. McIntosh and his counsel questions such as whether he suffered from any mental disability or whether there was any reason the hearing should not proceed. No objections or reasons not to proceed were given.

After the court discussed the rights being waived and the precise terms of the plea agreement with Mr. McIntosh, Mr. McIntosh asked to speak with his lawyer. He was allowed to do so, and when the hearing resumed his counsel informed the court that Mr. McIntosh had changed his mind again and now wished to go to trial. The court said, "All right. You understand the difference? . . . You know that whatever the government has told you about, you know, for 25 years here, the government can go a lot further?" (Id. at 39–40.) Mr. McIntosh said he did understand and confirmed that trial was what he wanted.

The government requested to speak with Mr. McIntosh again. The court allowed them to have an off-the-record conference. After this second conference with the government, Mr. McIntosh again indicated he was willing to proceed with the plea agreement. The court said, "All right. Thank you. If it helps, I think it's the right thing you did, all right?" (Id. at 40.) Mr. McIntosh then confirmed that he was satisfied with his representation and told the court there was no reason why it should not accept his guilty plea. The hearing proceeded with the government stating the facts underlying the charges, Mr. McIntosh expressly pleading guilty to each charged count, and the district court making findings to support the conviction—including a finding that "the plea of guilty is knowingly, voluntarily, and intelligently made with a full understanding of the nature of the charges, the consequences of the plea, and defendant's constitutional rights." (Id. at 49.) The court accepted the plea but deferred its decision on the stipulated sentence until the sentencing hearing, which was scheduled for February 3, 2020.

On December 30, 2019—approximately two months after entering the guilty plea, but before sentencing—Mr. McIntosh filed a motion to withdraw his plea. He claimed that the plea was not "knowing" because he did not understand "that the Court had no authority to order a sentence below the stipulated twenty-five years," and that it was not voluntary because "it was clear that [he] did not wish to enter plea of guilty" and "[t]he nature of the environment was such that Mr. McIntosh was unable to exercise his free will." (R., vol. I at 63–64.) The district court denied this

5

motion, finding that Mr. McIntosh's guilty plea was knowing and voluntary and as a result there was no "fair and just" reason to grant his request.  (Id. at 124.)

At sentencing, the district court accepted the plea agreement terms and sentenced Mr. McIntosh to 25 years' imprisonment.  This appeal followed, challenging both the district court's initial acceptance of the plea and its subsequent denial of the motion to withdraw the plea.

## II.    STANDARD OF REVIEW

Challenges to the validity of a plea are generally reviewed de novo.  United States v. Rollings, 751 F.3d 1183, 1191 (10th Cir. 2014).  The government argues, however, that Mr. McIntosh failed properly to preserve his challenges to the plea's validity, which would mean this court would apply a plain-error standard of review. See United States v. Perez-Perez, 992 F.3d 970, 974 (10th Cir. 2021).  We disagree. Mr. McIntosh specifically claimed that his plea was not knowing and not voluntary in his motion to withdraw the plea below.  In that motion, he supported his claims that the plea was not knowing by highlighting the statements that his "judgment" was not "right," his "mental state of mind" was not "right," and he did not "understand . . . what [was] really going on."  (R., vol. I at 83–84.)  As for his claims of involuntariness, the motion noted the repeated conferences with the government during the hearing and argued that they were coercive.

On appeal, Mr. McIntosh makes arguments that are substantially similar—if not identical—to his arguments below, asserting that the plea was not knowing and

6

not voluntary due to his "frail" mental state, which the district court inadequately explored, plus alleged coercion by the government. (Aplt. Br. at 14.) Though his appellate briefs may be more detailed than his motion to withdraw the plea, Mr. McIntosh's arguments below nonetheless gave the district court ample opportunity to consider these issues—and the district court in fact did so in a thorough written opinion. This is sufficient to preserve Mr. McIntosh's arguments. See United States v. Leffler, 942 F.3d 1192, 1196 (10th Cir. 2019) (noting that "a federal appellate court does not consider an issue not passed upon below" (emphasis added) (quoting Singleton v. Wulff, 428 U.S. 106, 120 (1976)).

We will review de novo Mr. McIntosh's claim that his guilty plea was not entered knowingly and voluntarily. United States v. Mitchell, 633 F.3d 997, 1002 (10th Cir. 2011) (applying de novo review where the issue of "whether [the defendant's] plea was knowing and voluntary was raised before the district court on multiple occasions").[1]

---

[1] Mr. McIntosh also appealed the district court's denial of his motion to withdraw his plea. That issue would be reviewed for an abuse of discretion, rather than de novo, because "[d]efendants do not have an absolute right to withdraw a guilty plea." United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000). Additionally, in the context of motions to withdraw, "[t]he burden is on the defendant to establish a 'fair and just reason' for the withdrawal of the plea." Id. (quoting United States v. Black, 201 F.3d 1296, 1299 (10th Cir. 2000)). See also Fed. R. Crim. P. 11(d)(2)(B). However, the underlying issue of "whether the plea was knowing and voluntary" is one of the factors courts must consider "in deciding whether a defendant has met the burden of showing that the district court, in denying a motion to withdraw a plea, acted unjustly or unfairly." Id. at 749. This factor is the only one addressed by Mr. McIntosh in his arguments regarding the motion to withdraw his plea. Because the "knowing and voluntary" requirement is constitutional, a district court abuses its discretion if it denies a motion to withdraw a plea that was not knowingly and

### III.    DISCUSSION

"The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty." Fields v. Gibson, 277 F.3d 1203, 1212–13 (10th Cir. 2002). See also Brady v. United States, 397 U.S. 742, 748 (1970). This means a defendant's decision to plead guilty must be "deliberate and intelligent and chosen from available alternatives." United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994), aff'd, 516 U.S. 29 (1995). In the first instance, the burden is on the sentencing court and the attorneys on both sides "to apprise the defendant of the consequences of the plea and ensure that it is voluntary. If these duties are not discharged, the defendant is not 'fully aware' of the consequences of the plea and it is therefore involuntary." United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1990), cert. denied, 499 U.S. 968 (1991) (quoting Brady, 397 U.S. at 755). Again, we assess de novo whether the district court and attorneys adequately performed those duties. Id. at 1455.

The specific content of the district court's duties in voluntariness determinations is governed by Federal Rule of Criminal Procedure 11(b), which requires among other things that the court "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats,

---

voluntarily entered. Consequently, our initial assessment of the constitutional validity of Mr. McIntosh's plea will necessarily control the outcome of our review of the denial of the motion to withdraw, and so we will not separately address that secondary issue.

or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(1–2).

See also Williams, 919 F.2d at 1456.   Though not itself a constitutional mandate,

"Rule 11 . . . is designed to assist the district judge in making the constitutionally

required determination that a defendant's guilty plea is truly voluntary" and "to

produce a complete record at the time the plea is entered of the factors relevant to

this voluntariness determination." McCarthy v. United States, 394 U.S. 459, 465

(1969).

Mr. McIntosh makes two main arguments as to why his plea was not knowing

and voluntary.  First, he claims that his "plea was not intelligently and deliberately

made, and the district court failed to ensure that he understood what he was doing

when he entered the plea," as evidenced by his statements at the beginning of the plea

hearing of being off his medications, about which the district court failed to inquire

fully.  (Aplt. Br. at 10–11.)  Second, he claims that his plea was involuntary because

his "will was overcome by mental coercion" arising from the government and the

district court's conduct during the hearing.  (Id. at 14.) We agree with his first

argument, though not his second, and find that Mr. McIntosh's statements about his

medication and mental fitness—which the district court failed meaningfully to

investigate—show that the plea was not knowing and voluntary in the absence of any

adequate Rule 11 record to the contrary.

To prove the invalidity of his plea, Mr. McIntosh points to several pieces of

evidence.  One is the fact that he changed his mind five times over the course of the

plea hearing.  But a district court does not have to reject a plea just because a

9

defendant is having trouble making up his mind. There is inherent angst in pleading guilty to a significant sentence. See Miles v. Dorsey, 61 F.3d 1459, 1470 (10th Cir. 1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary."). Mr. McIntosh's flip-flopping here reflected that angst, not a lack of understanding of the plea's consequences.

A second defect targeted by Mr. McIntosh is the alleged coercion resulting from the two off-the-record conferences with the government. Again, we find no evidence that these conferences affected Mr. McIntosh to such an extent that they would "overbear[] the will of the defendant." Brady, 397 U.S. at 750. Even an allegation that the defendant was "hounded, browbeaten and yelled at" by his own counsel urging him to accept a plea agreement is not sufficient to render a plea involuntary. United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996). As such, mere urging by the prosecutor (who the defendant knows to be in an adversarial position) in a plea discussion where defense counsel was present falls well short of coercion, if such urging even took place here—which, on the record, is speculative. Mr. McIntosh can point to no specific threats or statements made by the prosecution that would amount to "mental coercion," and this court will not assume that such threats occurred.

Third, Mr. McIntosh claims that "the district court added the weight of its opinion to the pressure exerted on Mr. McIntosh," exacerbating coercion, by stating

10

that the plea agreement was "better" for Mr. McIntosh after Mr. McIntosh said he would take the deal.  (Aplt. Br. at 15; R., vol. II, at 22.)  But this court has held that the district court does not violate Rule 11 by "questioning the defendant regarding the terms, consequences, and acceptance of the plea agreement" or "providing the defendant with information relating to these matters" once the agreement's complete terms have been presented in open court.  United States v. Carver, 160 F.3d 1266, 1269 (10th Cir. 1998).

In Carver, the district court had made comments that "evidenced some frustration" in response to the defendant's "vacillation" about whether or not he would accept a plea agreement, but this court nonetheless upheld the plea because "the judge's comments were prompted by an attempt to resolve the inconsistent positions taken by the defendant during the sentencing hearing and were, if anything, related to defendant's consideration of whether or not to withdraw his already negotiated plea agreement." Id. (emphasis in original).  The same is true here—any statements by the district court about the plea were made after the agreement's terms were agreed upon by the parties and presented to the court. Mr. McIntosh had already read and signed the written plea agreement before even entering the courtroom, and there was never any indication at that point that the terms of the agreement were up for revision.

Further, the district court made clear throughout the plea hearing that Mr. McIntosh was free to go to trial without additional consequence.  In United States v. Cano-Varela, this court found Rule 11 error where the district court told the

11

defendant at a status conference "that he would 'be doing at least ten years in a federal penitentiary' if he did not plead and was found guilty at trial, and that a post-trial 'sentence will ... be a harsh one.'"  497 F.3d 1122, 1133 (10th Cir. 2007).  The closest the district court came to such a statement here was its question, in response to one of Mr. McIntosh's statements that he wanted to go to trial rather than plead, that "[y]ou know that whatever the government has told you about, you know, for 25 years here, the government can go a lot further?"  (R., vol. II at 40.)  There are two important differences between this statement and that in Cano-Varela: first, the district court's statements in Cano-Varela occurred during a status conference, well before the plea agreement had been entered or even finalized.  Second, the Cano-Varela court expressly compared the post-plea sentence to a post-trial sentence and indicated certainly that the latter would be much higher.  The district court here, in contrast, merely checked that Mr. McIntosh understood that the government had the option to seek a higher sentence at trial—it did not suggest whether the court itself would impose a "harsh[er] one."  There is no evidence that the court's statements here gave Mr. McIntosh more information that he did not have as a result of his prior meetings with defense counsel and the government.  Thus, the statements by the district court as to the wisdom of the plea agreement here could not have changed Mr. McIntosh's risk/benefit calculus in accepting the agreement and so were not "coercive."

There is one, and only one, piece of evidence proffered by Mr. McIntosh that we view as significant in our analysis of whether his plea was knowingly,

intelligently, and voluntarily made.  That is Mr. McIntosh's statement at the beginning of the hearing that he had not been taking his medication and his judgment was not "right" as a result.  (R., vol. II at 16.)  The district court did not ask Mr. McIntosh any follow-up questions regarding the medication or underlying illness, or the effect on Mr. McIntosh of <u>not</u> taking his medication.  As a result, the record does not reflect any additional details about the medication or the reason it was prescribed to Mr. McIntosh, if indeed it was, nor about Mr. McIntosh's history with and need for that drug.

Where the district court is made aware during a plea proceeding that a defendant may be experiencing the effects of a mental illness, it must take that fact into account in its voluntariness determination.  See <u>Gonzales v. Tafoya,</u> 515 F.3d 1097, 1118 (10th Cir. 2008) ("In evaluating challenges to guilty pleas, courts must occasionally assess a defendant's contention that his mental illness rendered the plea invalid.").  The extent to which the claimed mental disorder affects voluntariness depends on the totality of the circumstances, and the district court's response under Rule 11 must attend to the specifics of the defendant's situation.  See <u>United States v. Tanner</u>, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam) ("Determining whether a defendant knowingly and voluntarily waived his rights is a question of law . . . that must be based on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused" (internal quotations and alterations omitted)).  The question here, then, is how much the lack of medication impacted Mr. McIntosh's ability knowingly and voluntarily to plead,

13

and whether the district court adequately considered that impact in accepting the plea.

In the only two cases in this circuit considering a defendant's claims that his guilty plea was invalid because he had not been taking his prescription medication, this court rejected the claims. Nicholls v. Bigelow, 558 F. App'x 778 (10th Cir. 2014) (unpublished); United States v. Cardenas-Uriarte, 498 F. App'x 843 (10th Cir. 2012) (unpublished). But in Nicholls, the defendant did not inform the trial court of the medication issue during the plea colloquy, raising it only after the fact. 558 F. App'x at 783. And in Cardenas-Uriarte, the district court asked about the medications during the plea hearing and the defendant stated that he deliberately chose not to take the medications that day to ensure he was clearheaded. 498 F. App'x at 845. Not so here, where Mr. McIntosh claimed at the hearing that he was being denied access to his medications and his judgment was impaired as a consequence, and the district court asked nothing further on the subject.[2]

We have more squarely addressed the voluntariness implications of a defendant's statements that he was taking medications that may be affecting his judgment at plea hearing. In United States v. Browning, this court held that the district court sufficiently ensured the voluntariness of the defendant's plea by confirming at the hearing that the two prescription medications the defendant was taking were "solely for treating ulcers and reducing pain" and the defendant "had

---

[2] Even if these cases were more directly on point, "[u]npublished decisions are not precedential." 10th Cir. R. 32.1.

never been treated for mental illness," in addition to the district court asking if the medications "in any way affected [his] ability to think or comprehend" (to which the defendant said no) and whether there had been any changes in the defendant's speech or actions due to the medication (to which defendant's counsel answered no).  61 F.3d 752, 754 (10th Cir. 1995).  Browning clarified that just a few questions from the district court in response to a defendant's claim that he is under the influence of medications can be enough to demonstrate voluntariness and satisfy Rule 11.[3]  But while we have said that those questions are sufficient to ensure voluntariness, we have not determined whether they are also necessary to ensure voluntariness.

Other circuits addressing the same question as Browning—that is, how much a district court must investigate "a defendant's statement that he presently is or may be under the influence of medication" during a plea hearing—have held that at a minimum, "[d]istrict courts should ask about the types of drugs and whether the medications are affecting the defendant's mental state." United States v. Carter, 795 F.3d 947, 952 (9th Cir. 2015).  See also United States v. Yang Chia Tien, 720

---

[3] This court has repeatedly rejected defendants' claims that medications created voluntariness problems when the defendant failed to mention the medication or claim ill effects from it during the plea hearing itself—at least where there is no other evidence, direct or circumstantial, reasonably suggesting to the court that the drugs may be important to the voluntariness inquiry.  See, e.g., United States v. McGiff, 85 F.3d 641 (10th Cir. 1996) (unpublished); United States v. Coates, 483 F. App'x 488, 495 (10th Cir. 2012) (unpublished); Freisinger v. Keith, 473 F. App'x 846, 848 (10th Cir. 2012) (unpublished).  Those cases are inapposite, however, given that the question here is what the district court needed to do to confirm the plea's validity when the defendant actually claimed mental impairment due to lack of medication at the hearing, not merely after the fact.

15

F.3d 464, 470 (2d Cir. 2013); United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000); United States v. Damon, 191 F.3d 561, 565 (4th Cir. 1999); United States v. Cole, 813 F.2d 43, 46 (3d Cir. 1987). But "[i]n general, appellate courts have vacated pleas only when the district court failed completely to engage in any meaningful follow-up with a defendant." Carter, 795 F.3d at 952.

We think a similar approach is fitting for this analogous context, in which a defendant tells the district court that he has not been taking his medications and specifically indicates that the absence of those medications is impairing his judgment. The district court must ask some follow-up questions such as what the medications are, what conditions they treat, and how those conditions affect the defendant's present mental state. Here, the district court asked no questions inquiring about the medication specifically. Consequently, it was never established that Mr. McIntosh entered his plea knowingly and voluntarily, and we must vacate his plea as invalid as a matter of due process.

Neither the findings of an earlier competency evaluation nor the district court's later questions about Mr. McIntosh's mental state are sufficient to cure the voluntariness issue we have identified. The competency evaluation—which the district court ordered at the request of Mr. McIntosh's counsel based on his past diagnoses of mental disorders—indicated that Mr. McIntosh was not presently suffering any disorder that would render him unable to understand the proceedings against him. But a competency evaluation is not a proxy for the voluntariness determination. Godinez v. Moran, 509 U.S. 389, 400 (1993); Allen v. Mullin, 368

16

F.3d 1220, 1240 (10th Cir. 2004) ("The competency inquiry focuses on a defendant's ability to understand the proceedings; the 'knowing and voluntary' inquiry focuses on whether he in fact did understand the proceedings." (citing Godinez, 509 U.S. at 400)).  The stakes are too different—in pleading guilty, the defendant is surrendering the procedural safeguards of trial that are designed to ensure a fair process for all defendants, including those who are mentally ill.  See McCarthy, 394 U.S. at 466. The district court's voluntariness determination requires confirmation of mental capacity greater than mere competency to stand trial in order to protect the due process rights of a defendant who is legally competent but nonetheless incapable of making a deliberate, intelligent, and voluntary choice to surrender his constitutional rights at the moment of his plea hearing.[4]

The district court's generalized questions about Mr. McIntosh's mental state during the colloquy were not sufficient to ensure that the plea was knowing and voluntary in light of Mr. McIntosh's statement about the medication.  While the district court did ask defense counsel for their thoughts immediately after Mr. McIntosh's statement about the medication, counsel did not address the issue directly

---

[4] We do not mean to imply that a defendant with a mental disorder—even a severe one—will be unable, as a matter of law, to enter a valid guilty plea.  See Wolf v. United States, 430 F.2d 443, 445 (10th Cir. 1970) ("[T]he presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea.").  We mean only to emphasize the need for the district court to investigate adequately a defendant's professed mental impairment to ensure that a plea is truly voluntary and knowing.  Asking a few follow-up questions when the defendant references medication that he should be taking, but is not taking at the time of the plea, is required to fill that crucial role.

and instead broadly stated that they didn't "have any concerns in regard to competency" given the prior forensic evaluation. (R., vol. II at 18.) This follow-up was insufficient for two reasons. First, counsel addressed competency rather than voluntariness, which as we have said are different things. Second, Mr. McIntosh himself—not merely his counsel—needed to be asked to elaborate on how the lack of medication was affecting him, given that only he could give a personal account. See McCarthy, 394 U.S. at 465 (explaining that Rule 11 requires "court to address defendant personally" in order to "expose[] the defendant's state of mind on the record"); United States v. Vera, 514 F.2d 102, 104 (5th Cir. 1975) ("[M]ere assurance of defense counsel is not sufficient" to ensure defendant's understanding of charge against him at plea hearing). The district court's other inquiries about Mr. McIntosh's mental state came later in the plea colloquy, shortly after Mr. McIntosh had said he would take the deal the first time (but before he changed his mind the second time):

> THE COURT: All right. Have you been treated recently for any mental illness or addiction to narcotics of any kind?
> THE DEFENDANT: Yes.
> THE COURT: What was that?
> THE DEFENDANT: When I went for my evaluation.
> THE COURT: All right. But what did you get?
> THE DEFENDANT: I don't know. They didn't tell me.
> THE COURT: Who was that? The person that you're talking about.
> THE DEFENDANT: I don't—I don't remember her name.
> . . .
> THE COURT: All right. Are you currently under the influence of any drug, medication, or alcoholic beverage of any kind?

18

THE DEFENDANT: No.
THE COURT: Do you suffer from any mental condition or disability that would prevent you from fully understanding the charges against you or the consequences of your guilty plea?
THE DEFENDANT: No.
THE COURT: All right.  Is there any reason we should not go forward here today?
THE DEFENDANT: No.[5]

(Id. at 24–25.)

Mr. McIntosh also responded "yes" when asked later if he understood the plea agreement and its consequences.  (Id. at 37–38.)  It is true that Mr. McIntosh's statement that he did not "suffer from any mental condition" affecting his understanding was in conflict with his prior assertion that his judgment was not right and that he had not received his medications.  But the obviousness of that contradiction merely highlights the need for the district court to inquire further in order to decide which statement was the more accurate one.  If anything, this inconsistent response should have alerted the district court of the need to ask more specific questions about the medication—particularly given Mr. McIntosh's ambiguous answer about what treatment for mental illness he had previously received and should be receiving.

---

[5] Had Mr. McIntosh not given the more precise and unsolicited statement earlier in the hearing that contradicted this assurance and suggested that he did have a mental disability hindering his understanding of the plea, this colloquy would have been sufficient to confirm that the plea was knowingly and voluntarily entered. See United States v. Tanner, 721 F.3d 1231, 1233–34 (10th Cir. 2013).

We generally accept a defendant's in-court assurance that he understands a plea agreement and voluntarily accepts it.  United States v. Sanchez-Leon, 764 F.3d 1248, 1260 (10th Cir. 2014).  However, that practice cannot excuse the court from exploring the validity of a specific assertion by a defendant that he is not thinking clearly because he is off his medications.  If a defendant's lack of essential medicines prevents him from voluntarily entering a plea, it would similarly cast doubt on his later assertion that he did voluntarily enter the plea.

To be clear, we do not hold that a defendant's specific statements about his mental capacity always trump the defendant's responses to the district court's general colloquy questions.  The need to interrogate about such statements will be governed on a case-by-case basis.  But here, Mr. McIntosh began his change-in-plea hearing by stating that he was not taking his medication and was mentally impaired as a result.  The district court's generalized (even boilerplate) inquiries into Mr. McIntosh's mental state some time later in the hearing—after he had changed his mind several times—did not uncover any more details about this missing medication and so were not sufficient to ensure the plea was knowing and voluntary.[6]

---

[6] The dissent makes much of the fact that Mr. McIntosh raised a "long list of concerns" in addition to his missing medication, as he also complained about the length of the plea agreement sentence, the conditions at the jail, and the loyalty of his counsel.  Dissent at 3–5.  Of course displeasure with a sentence and conditions of confinement cannot invalidate a defendant's knowing and voluntary plea.  But Mr. McIntosh's expressed unhappiness at a long sentence does not mean that his separate statement that he was off his medication and mentally unwell can be automatically dismissed as mere "malingering," without further investigation by the district court.  His statement about not taking medication is a specific assertion casting doubt on his mental fitness, and so the district court should have inquired more about it to resolve

In sum, the record indicates that Mr. McIntosh's guilty plea was not established as knowing and voluntary as required by the Constitution because the district court did not at all address his specific claim that he was off his medication and his judgment was therefore impaired. "A guilty plea is void if it is not knowing and voluntary." United States v. Gigley, 213 F.3d 509, 516 (10th Cir. 2000). As a result, the plea cannot stand and we must vacate the convictions that flowed from it. Because we find his plea invalid on these grounds, we need not consider Mr. McIntosh's remaining arguments.

## IV. CONCLUSION

For the reasons stated above, Mr. McIntosh's convictions are VACATED and the case REMANDED to the district court for proceedings consistent with this opinion.

---

that doubt. We express no opinion on whether the district court could have reasonably found Mr. McIntosh's first statements about his ability to plead disingenuous once it had asked him follow-up questions about his medication and the illness for which it was prescribed. It is the failure even to try to gather that information that invalidates Mr. McIntosh's plea, as there is nothing in the record following up on Mr. McIntosh's initial statement that he had not been taking his medication and his mental state was too unstable to enter a plea.

21

*United States v. McIntosh*, No. 20-5089.

**EID,** Circuit Judge, dissenting:

Today, the majority holds "it was never established that McIntosh entered his plea knowingly and voluntarily," and thus, "we must vacate his plea as invalid as a matter of due process." Maj. op. at 16. In arriving at this conclusion, the majority also announces a broad rule: "[where] a defendant tells the district court that he has not been taking his medications and specifically indicates that the absence of those medications is impairing his judgment," "[t]he district court must ask some follow-up questions such as what the medications are, what conditions they treat, and how those conditions affect the defendant's present mental state." *Id.* Here, I dissent because I do not find support in our caselaw for the rule pronounced by the majority, and because I do not find that the absence of an immediate and direct inquiry rendered McIntosh's plea involuntary or unknowing.

One factor under the voluntariness inquiry is whether there was "an adequate Federal Rule of Criminal Procedure 11 colloquy." *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam); *see United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (finding that a "properly conducted plea colloquy . . . will, in most cases, be conclusive"). As the majority notes, Rule 11 is not a constitutional mandate itself, though the rule provides additional framework outlining the duties of a district court in a voluntariness determination. *See McCarthy v. United States*, 394 U.S. 459, 465 (1969); *see also* Fed. R. Crim. P. 11(b)(1–2) (stating that the Rule 11 colloquy requires the district court to "address the defendant personally in open court and determine that

the plea is voluntary").  It is within this framework that the majority pronounces a broad

rule requiring district courts to ask direct and specific follow-up questions whenever  "a

defendant tells the district court that he has not been taking his medications and

specifically indicates that the absence of those medications is impairing his judgment."

Maj. op. at 16.  However, I do not find that our caselaw requires that a district court take

a more specific, direct, or immediate action in response to the particular circumstances

before the court here.

In support of its rule, the majority cites to *United States v. Browning*, 61 F.3d 752,

754 (10th Cir. 1995).  But in that case we found the court's inquiry to be sufficient and

the defendant's plea to be voluntary, and the court's actions in *Browning* are not far from

what the district court did here.  Just like in *Browning*, the court here immediately asked a

series of questions to McIntosh's attorneys which elicited an extended discussion about

McIntosh's understanding of the plea agreement, his concerns, and his overall

competency.  *See* R. Vol. II at 17–20, 25–26; *see also Browning*, 61 F.3d at 754 (finding

that the court asked his counsel whether there had been any changes in the defendant's

speech or actions due to the medication).  Even though the court did not immediately

target McIntosh and ask about his comments relating to his medication, the court's

inquiry—which did occur immediately after McIntosh's list of concerns—resulted in a

robust discussion that focused on McIntosh's mental state and his overall understanding.

Additionally, similar to the court in *Browning*, the court here gave McIntosh

additional time and then, in a plea colloquy prompted by McIntosh that took place

immediately after that recess, it asked whether McIntosh was "currently under the

2

influence of any drug [or] medication," and whether he "suffer[ed] from any mental condition or disability that would prevent [him] from fully understanding the charges . . . or the consequences of [his] guilty plea." R. Vol. II at 25; *see Browning*, 61 F.3d at 754 (finding that the court asked "whether the medication had in any way affected Mr. Browning's ability to think").

Similar to our holding in *Browning*, and considering these facts, I do not find that "the district court failed completely to engage in a meaningful follow-up" with McIntosh. Maj. op. at 16 (quoting *United States v. Carter*, 795 F.3d 947, 952 (9th Cir. 2015). Although the court's immediate follow-up may have lacked direct questions to McIntosh about his mental state and alleged lack of medication, the court's general inquiry was an appropriate response to McIntosh's long list of concerns, especially when coupled with its subsequent, extensive plea colloquy that did in fact ask McIntosh about his mental state, mental condition, and any influence of "any drug, medication, or alcohol." R. Vol. II at 25.

Next, shifting the focus from the district court to McIntosh's mental state at the time of his plea, looking to "all of the relevant circumstances surrounding [the plea]," I find that McIntosh had a sufficient understanding to voluntarily and knowingly plead guilty. *Brady*, 397 U.S. at 748. First, while competency and voluntariness are not the same thing, these concepts involve a large amount of overlap, and the psychologist's previous competency examination was relevant to McIntosh's state of mind at the time of his plea. Dr. Danielle Powers, a licensed psychologist and forensic evaluator, evaluated McIntosh over the course of a month, administering several tests to assess McIntosh's

3

memory impairment, self-reported psychiatric symptoms, and ability to understand legal proceedings. [R. Vol. IV at 21–22.] Powers concluded that McIntosh did not presently meet the diagnostic criteria for any mood, depressive, or psychiatric disorders, and found no evidence that McIntosh "could not assist his attorney with his defense, or [of] the presence of a mental disease or defect that render[ed] him unable to understand the nature and consequences of the proceeding against him." R. Vol. II at 30–31. Instead, Powers "diagnosed him with substance abuse disorders and malingering," or "feigning," meaning Powers noted a belief that McIntosh was faking or exaggerating an illness or incapacity.[1] R. Vol. II at 18; maj. op. at 4.

Second, on the day of his plea, McIntosh's list of concerns was not simply that he was not thinking clearly and that he was not taking proper medication. On the one hand, McIntosh started his statement with an entirely different concern: "honestly I felt like it's too much time in my opinion." *Id.* at 19. In response to the court's follow-up questions, this is exactly how McIntosh's counsel framed the issue: "I think the real problem is what Mr. McIntosh said initially, which is, it's a lot of time." *Id.* at 19.

On the other hand, immediately after his mental state comment, McIntosh said, "I'm all over the place. You know, I want to take the deal, I don't want to take the deal." *Id.* at 16. He continued, uninterrupted: "And another thing is, at the jail they sent me to I have no access to no law library and I have, you know, limited phone calls . . . ." *Id.*

---

[1] Malingering is diagnosed when the essential feature is the intentional production of "false or grossly exaggerated physical or psychological symptoms," motivated by external incentives such as evading criminal prosecution. Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5).

4

After the court momentarily confirmed which jail he was referring to, McIntosh went on: "They don't even provide you like underwear or socks . . . . I also kind of feel like . . . I just don't feel like my lawyer is really working for me.  I feel like he's working against me." *Id.* at 17.

When considered all together, these facts show it was possible that McIntosh's comment was just more of the malingering he previously displayed in his medical examination, especially considering the understandably heavy decision he had to make. McIntosh's long list of concerns seem to point towards the idea that he was scrambling to buy more time to make a decision on his plea, and that his main concern was that he did not like the amount of time that was being offered by the government.  Surely, this is not to say that the district court could not have thought otherwise.  But, looking to the totality of the circumstances, I cannot find that McIntosh's comment was so egregious as to dismantle the voluntariness of his plea, or require that the court halt its general concerns or inquiries and direct its attention to one line in McIntosh's larger statement.

Even after McIntosh's list of concerns, McIntosh's two attorneys told the district court that McIntosh was competent to make this decision.  Directly after McIntosh's comments, the court noted that "it seems to me that he needs some [more] time," and then asked Ms. Gullekson, one of McIntosh's lawyers, what she thought.  *Id.* at 17.  That lawyer told the court that she was there when they "went over the terms of the plea agreement, the charges . . . , the potential ranges of punishment, the trial rights, and the deal," and that she believed McIntosh "did have a basic understanding of it."  *Id.* at 17–18.  At this point, the court turned to Mr. Widell, McIntosh's other lawyer, who told the

5

court, given the fact that the case began with a psychological evaluation, he did not have "any concerns in regard to competency," and that the report stated "no concerns . . . regarding competency." *Id.* at 18. Even after the plea colloquy, the court again asked Gullekson whether she believed McIntosh was "in possession of his faculties and [was] competent to proceed," to which she responded, "Yes." *Id.* at 25–26.

Finally, it is also of no small consequence that McIntosh himself assured the court, under oath, that he knowingly and voluntarily wanted to plead guilty. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). The essence of the plea colloquy is to ensure the voluntary and knowing state of the defendant, and that is precisely what the district court offered McIntosh. *See McCarthy*, 394 U.S. at 465 ("By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent post-conviction attack."); *Tanner*, 721 F.3d at 1233–34 ("A properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary.").

Upon returning from recess, as the district court started to ask counsel a question, McIntosh independently spoke up, telling the court he wanted to "take the deal." *Id.* at 24. Moments later, after the court made sure it understood his intent, the court began its plea colloquy with McIntosh. During the colloquy, the court asked whether McIntosh was "currently under the influence of any drug [or] medication." R. Vol. II at 25. McIntosh said, "No." *Id.* The court asked, "Do you suffer from any mental condition or

6

disability that would prevent you from fully understanding the charges against you or the consequences of your guilty plea?" McIntosh responded, "No." *Id.* The court also asked McIntosh whether he had been treated for any mental illness, and McIntosh responded, "Yes," though he "didn't know" what the mental illness was that he was treated for. *Id.* at 24. Finally, the court asked, "Is there any reason we should not go forward here today?" *Id.* McIntosh responded, "No." *Id.*

Overall, the colloquy covered McIntosh's mental state at the time of the hearing, his mental condition, the influence of any drugs or medication on that mental condition, and his understanding of the consequences of his plea. Taken together with the surrounding circumstances, the court's questions and McIntosh's answers demonstrated that McIntosh's plea was knowing and voluntary. This is true even where McIntosh initially stated that one of his concerns was he felt like his "mental state of mind [was]n't right" and that the jail had taken him off medication. *Id.* at 16.

Therefore, I believe the totality of the circumstances show that McIntosh knowingly and voluntarily entered into his guilty plea. Considering the context of McIntosh's list of concerns, his two attorneys' statements, and McIntosh's own statements to the court, I believe there is enough evidence to show that McIntosh understood what was going on, including the consequences of his guilty plea, and voluntarily plead guilty.

Respectfully, I dissent.

7