FILED
United States Court of Appeals
Tenth Circuit

January 26, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN MIGUEL SWAN,

    Defendant - Appellant.

No. 22-6132
(D.C. No. 5:21-CR-00028-F-1)
(W.D. Okla.)

_____

**ORDER**

_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

This matter is before the court *sua sponte* for purposes of revising our decision. The court's January 23, 2024 opinion in this matter is withdrawn and replaced by the attached revised opinion. The Clerk shall file the attached revised opinion *nunc pro tunc* to the date the original opinion was filed.


Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN MIGUEL SWAN,

    Defendant - Appellant.

No. 22-6132

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:21-CR-00028-F-1)**
_____

Keith Bradley of Squire Patton Boggs (US) LLP (Virginia L. Grady, Federal Public Defender; Leah D. Yaffe, Assistant Federal Public Defender, on the opening brief), Denver, Colorado, for Defendant-Appellant.

Allison B. Christian, Assistant United States Attorney (Robert J. Troester, United States Attorney, and Jackie Hutzell, Assistant United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

John Swan appeals the district court's denial of his presentence motion to withdraw his guilty plea. At the hearing on Swan's motion, plea counsel testified that he told Swan, who is Black, that all minorities would be removed from his jury and

that his case would be tried before exclusively white jurors. This material misrepresentation about Swan's right to an impartial jury selected through racially nondiscriminatory means occurred just before Swan told plea counsel that he wanted to plead guilty. What's more, counsel's misrepresentation was neither corrected during the district court's plea colloquy nor negated by Swan's prior experience in the criminal-justice system. Under these circumstances, Swan's plea was unknowing and involuntary, and the district court abused its discretion in denying Swan's motion to withdraw his guilty plea. We thus vacate Swan's conviction and remand for the district court to allow Swan to withdraw his guilty plea and for further proceedings.

## Background

While arresting Swan on a warrant stemming from state domestic-violence charges, Oklahoma police officers saw ammunition "f[a]ll from somewhere on . . . Swan's person" and land on the ground. R. vol. 1, 96. The video of the arrest from the officers' body cameras does not show the ammunition falling out of Swan's pocket, but still images taken from the bodycam footage show ammunition on the ground near where Swan was taken down. Based on this incident, a grand jury indicted Swan for being a felon in possession of ammunition. *See* 18 U.S.C. § 922(g)(1). Swan entered a guilty plea, which the district court accepted after conducting a plea colloquy.

Five months later, the district court allowed Swan's plea counsel to withdraw after finding a complete breakdown of effective communication and the absence of a workable attorney-client relationship. On the same day, it appointed new counsel for

2

Swan.

Around two months later, Swan wrote a pro se letter to the district court asserting his factual innocence and indicating that plea counsel had "compelled" him to plead guilty. R. vol. 1, 38. The district court treated this letter as a motion to withdraw the plea and ordered additional briefing. Swan's counsel then filed an expanded motion to withdraw the plea, arguing that Swan was factually innocent. Counsel also argued that Swan's plea was unknowing and involuntary because Swan "believed, based on his discussions with [plea] counsel, that he had no choice but to plead guilty because it would be his word against the word of the police, and that he would necessarily be disbelieved by a jury." *Id.* at 52.

At the hearing on the motion to withdraw the plea, Swan testified that he was factually innocent and said that the complete video footage of his arrest showed that law enforcement had planted the ammunition after his arrest. He further testified that he "didn't feel like [he] was going to be able to get a fair trial" and that the jury would believe the officers over him. R. vol. 3, 21.

Testifying for the government, plea counsel explained that in his meetings with Swan, he showed Swan still images from the bodycam footage of the arrest, as well as a short clip of the footage, but not the entire video. He explained that although the video did not show the ammunition falling out of Swan's pocket, the still images showed "Swan being placed on the ground, . . . being picked up, and then the clip being within close proximity of where he was placed facedown." *Id.* at 48. Describing his final meeting with Swan, plea counsel said that he showed Swan the

3

video clips and still photos again and told "Swan that it would be his word against all of the officers that were present." *Id.*

Plea counsel further testified that he told Swan, during this final meeting, that the jury "would be [composed] of no one of minority color." *Id.* More than that, plea counsel also agreed on cross-examination that he had told Swan the jury "would be culled of any minorities." *Id.* at 64. According to plea counsel, Swan paused after receiving this information and then said "that he was going to go ahead and enter a plea of guilty." *Id.* at 49. Plea counsel testified that he told Swan he would not let Swan plead guilty if the ammunition was not Swan's. Then, plea counsel stated, Swan "disclosed . . . that it was his." *Id.*

The parties then offered closing arguments, with the government contending that Swan's assertion of factual innocence was not credible, that his plea was knowing and voluntary, and that he had close assistance of counsel. Swan's counsel argued to the contrary on each point. In so doing, Swan's counsel twice emphasized that plea counsel's statement about the all-white jury contributed to Swan being compelled to enter a guilty plea.

Ruling from the bench, the district court devoted most of its discussion to concluding that Swan's assertion of factual innocence was "not credible" because Swan merely "had a change of heart after he saw the full videos in terms of his evaluation of his odds" and "offered nothing other than his speculation that these officers would have been motivated to, would have been willing to, and did, in fact, plant the [ammunition]." *Id.* at 92–93. The district court also briefly concluded that

4

Swan had close assistance of counsel and that his plea was knowing and voluntary. On the latter point, it did not mention plea counsel's commentary about the selection and makeup of Swan's potential jury and instead reasoned that because Swan had prior experience with the criminal-justice system, he understood what it meant to plead guilty. Overall, the district court concluded that Swan failed to show a fair and just reason to withdraw his plea and thus denied the motion.[1]

At sentencing, the district court imposed the statutory maximum of ten years in prison,[2] followed by three years of supervised release.[3] Swan appeals.

## Analysis

Swan argues that the district court erred in refusing to allow him to withdraw his plea. Reviewing that decision, we would typically ask whether the district court abused its discretion in assessing, under this circuit's applicable seven-factor test, whether Swan "'establish[ed] a fair and just reason' for his request" to withdraw his

---

[1] About two months after the district court's ruling, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The next month, Swan filed a pro se motion to reconsider the ruling on his motion to withdraw his plea. The district court permitted argument on the reconsideration motion prior to sentencing, and there Swan's counsel also argued that Swan should be entitled to withdraw his plea on grounds of legal innocence because the felon-in-possession statute was unconstitutional under *Bruen*. The district court rejected the *Bruen* argument and denied the motion for reconsideration.

[2] The statutory maximum for this crime has since increased to 15 years. *See* Bipartisan Safer Communities Act, Pub. L. 117-159, sec. 12004(c), 136 Stat. 1313, 1329 (2022) (codified at 18 U.S.C. § 924(a)(2), (8)).

[3] Swan's sentencing range under the United States Sentencing Guidelines was 57 to 71 months, based on a total offense level of 18 and a criminal-history category of VI. The district court imposed a longer sentence based primarily on concerns about Swan's lengthy criminal history, noting that prior sentences had not deterred him and that he needed to be incapacitated.

5

plea. *United States v. Dominguez*, 998 F.3d 1094, 1103–04 (10th Cir. 2021) (quoting

*United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016)); *see also* Fed. R.

Crim. P. 11(d)(2)(B) (allowing withdrawal of plea before sentencing if "defendant

can show a fair and just reason for requesting the withdrawal"). But one of those

seven factors, and one that Swan raises on appeal, is whether the plea was knowing

and voluntary. *See Dominguez*, 998 F.3d at 1103–04. The requirement that a plea be

knowing and voluntary stems from the Due Process Clause of the Fourteenth

Amendment and is a legal issue that we review de novo. *United States v. McIntosh*,

29 F.4th 648, 655 (10th Cir. 2022); *see also id.* at 655 n.1 (explaining that district

court necessarily "abuses its discretion if it denies a motion to withdraw a plea that

was not knowingly and voluntarily entered"). We therefore begin—and ultimately

end—our assessment of Swan's overall withdrawal argument with his position that

his plea was not knowing and voluntary.

A knowing and voluntary plea "must be 'deliberate and intelligent and chosen

from available alternatives.'" *Id.* at 655 (quoting *United States v. Libretti*, 38 F.3d

523, 529 (10th Cir. 1994), *aff'd*, 516 U.S. 29 (1995)). Stated differently, "[t]o enter a

plea that is knowing and voluntary, the defendant must have 'a full understanding of

what the plea connotes and of its consequence.'" *Marceleno*, 819 F.3d at 1276

(quoting *United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002)). Thus, and

as relevant here, "[a] plea may be involuntary when an attorney materially

misinforms the defendant of the consequences of the plea." *Fields v. Gibson*, 277

F.3d 1203, 1213 (10th Cir. 2002) (quoting *United States v. Rhodes*, 913 F.2d 839,

6

843 (10th Cir. 1990)). In that instance, "the defendant must show the plea was a product of [the] material misrepresentation[]," meaning that he or she "relied" on the misrepresentation or that the misrepresentation impacted the decision to plead. *United States v. Williams*, 919 F.2d 1451, 1456 (10th Cir. 1990).

Swan contends that his plea was not knowing or voluntary "because he was informed that one of the rights he was waiving by pleading guilty—his right to an *impartial* jury trial—was effectively nonexistent." Aplt. Br. 18. In support, he relies on plea counsel's testimony that the jury "would be [composed] of no one of minority color" and that Swan "wasn't going to get a very good jury because it would be culled of any minorities." R. vol. 3, 48, 64. Swan contends this statement materially misrepresented the nature of his right to an impartial jury, and he asserts that this misrepresentation impacted his decision to enter his plea.

To its credit, the government does not dispute that plea counsel's commentary on the selection process for and racial makeup of Swan's hypothetical jury fundamentally and materially misrepresented the constitutional guarantees of being tried by a jury of one's peers that is selected without racial discrimination.[4] As the Supreme Court has long held, "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the

---

[4] The government also does not argue that Swan forfeited this argument by failing to make it below and waived it on appeal by failing to argue for plain error. The government has therefore waived any such argument. *See United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) (holding that government "waived the waiver" where it did "not argue [d]efendant waived his present challenge").

protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986); *see also Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019) ("Equal justice under law requires a criminal trial free of racial discrimination in the jury[-]selection process."). Thus, as the government does not dispute, plea counsel's statement to Swan was a material misrepresentation about one of the rights Swan was sacrificing by pleading guilty.

The government nevertheless argues that this material misrepresentation did not render Swan's plea unknowing and involuntary. It first seeks to elevate the applicable standard that Swan must meet from showing a material misrepresentation that rendered his plea unknowing and involuntary to establishing a claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). For support, it relies on habeas cases involving claims of plea-stage ineffective assistance of counsel for the proposition that "[w]hen an involuntariness claim rests on *the faulty legal decisions or predictions* of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988) (emphasis added), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))).

8

But *Strickland* doesn't apply here. Swan's argument is not that plea counsel ineffectively made a "faulty legal decision or prediction," *Worthen*, 842 F.2d at 1184—his argument is that plea counsel materially misrepresented the nature of his right to a jury trial and rendered his waiver of that right unknowing and involuntary because he did not know what he was surrendering. In other words, Swan does not take issue with the quality of his representation as it pertains to plea counsel's legal guidance specific to his case; rather, he states that he did not understand one of the rights he was giving up because plea counsel materially mischaracterized that right. *Cf. Worthen*, 842 F.2d at 1183–84 (applying *Strickland* to claims that plea counsel misrepresented when defendant would be paroled, that defendant would receive immunity on other charges, and that counsel would represent defendant in other matters). Indeed, we have often separately examined claims of attorney misrepresentation in the knowing-and-voluntary context outside of *Strickland*. *See Laycock v. New Mexico*, 880 F.2d 1184, 1186–87 (10th Cir. 1989) (assessing voluntariness of plea in light of attorney's alleged material misstatements about potential for suspended sentence separately from five ineffectiveness claims subject to *Strickland*); *United States v. Rhodes*, 913 F.2d 839, 842–44 (10th Cir. 1990) (assessing voluntariness of plea in light of attorney's alleged material misstatements about likely length of sentence and then reviewing ineffectiveness claim separately, under *Strickland*); *United States v. Carr*, 80 F.3d 413, 416–19 (10th Cir. 1996) (analyzing voluntariness of plea under three arguments, only one of which also constituted ineffectiveness claim). We take the same path here and review Swan's

9

claim as he presents it: a claim that his plea was not knowing and voluntary.

Under that standard, Swan must show the material misrepresentation impacted his decision to plead guilty. *See Williams*, 919 F.2d at 1456. The record here establishes just that. Plea counsel recalled concluding his final meeting with Swan by "inform[ing] . . . Swan that it would be [Swan's] word against all of the officers that were present, the body[-]cam footage, and jurors that would be [composed] of no one of minority color." R. vol. 3, 48. And on cross-examination, plea counsel agreed that he in fact told Swan all minorities would be removed from the jury. The government then asked plea counsel what Swan decided to do; plea counsel replied that "Swan at that point paused" and "then [said] that he was going to go ahead and enter a plea of guilty." *Id.* at 49. This testimony and timeline establishes that Swan relied, at least in part, on plea counsel's material misrepresentation.[5]

The government asserts that Swan cannot show reliance because his motions to withdraw his plea did not mention plea counsel's misrepresentation and instead focused on factual innocence. But when those motions were filed, Swan did not yet know he had been materially misinformed about his jury-trial right, and thus neither did his counsel. Moreover, the pro se motion mentioned that plea counsel's

---

[5] To be sure, plea counsel later indicated that "the still photos and the clip of the video" are what "changed" Swan's assertions of innocence into a desire to plead guilty. R. vol. 3, 71. And the district court noted "that [Swan's] decision to plead guilty was driven by the facts and by [his] realistic assessment of his chances at trial." *Id.* at 88. But Swan viewed the photos and video clip during the same conversation in which plea counsel materially misrepresented the jury-trial right, and we cannot separate the two—particularly in light of plea counsel's description of precisely when, during their final conversation, Swan decided to plead.

statements "compelled" him to plead, and Swan's counseled motion asserted that Swan thought he would be "disbelieved" by a jury: both concerns would reasonably flow from being told that the jury would be culled of all minorities. R. vol. 1, 38, 52.

The government also argues that Swan's prior experience with the judicial system proves that plea counsel's misrepresentation did not make a difference to his decision to plead guilty because Swan necessarily knew how jury trials work.[6] But as Swan replies, the record contains nothing about the nature of his prior experiences in criminal court. Indeed, although the government notes that Swan cited his prior criminal-court experience as one of the reasons he was entering a guilty plea, such fact does not assist the government—for all we know, he *had* an all-white jury in that prior case, which would only reinforce the material misrepresentation at issue here. In short, that Swan has prior experience in criminal court does not mean he could not have relied on plea counsel's material misrepresentation in this case.

Last, the government invokes the thoroughness of the district court's colloquy under Federal Rule of Criminal Procedure 11 at the change-of-plea hearing. But the Rule 11 colloquy is not the source of the misrepresentation at issue here, so the government's argument puts the cart before the horse. *Cf. Williams*, 919 F.2d at 1456 ("Both the attorneys and the court have a duty to apprise the defendant of the consequences of the plea and ensure that it is voluntary."). Even if "[n]othing in Rule 11 requires a court to advise a defendant that he is giving up his right to a fair,

_____

[6] Recall that Swan's prior experience in the criminal-justice system was also the basis for the district court's knowing-and-voluntary ruling.

11

impartial, or unbiased jury," Aplee. Br. 13, the more relevant question here is whether anything in the Rule 11 colloquy negated or overcame plea counsel's material misrepresentation about Swan's jury-trial rights. *See Dominguez*, 998 F.3d at 1106 (noting that defendant did "not contest the sufficiency of the court's Rule 11 colloquy" but addressing other circumstances that could have rendered plea unknowing or unintelligent). And there is no dispute here that the district court did not delve into the right to an impartial jury selected without racial bias, effectively (although certainly unintentionally) allowing plea counsel's misrepresentation to stand uncorrected. Thus, we reject the government's Rule 11 argument.

In sum, because plea counsel advised Swan that his jury would be culled of all minorities—suggesting implicitly "that [Swan] would not receive a fair trial because of race"—Swan was materially misinformed about the nature of one of the rights he was sacrificing by pleading guilty: his right to a jury trial, which includes the right to a jury of his peers selected via nondiscriminatory means. Aplt. Br. 13. And plea counsel's testimony established that Swan relied on this misrepresentation when deciding to plead guilty. Nothing in the Rule 11 colloquy corrected the misrepresentation; nor, on this record, did Swan's prior experience with the criminal-justice system. We therefore hold that Swan's plea was not knowing and voluntary and that the district court accordingly abused its discretion in denying Swan's motion to withdraw his plea.[7] *See McIntosh*, 29 F.4th at 655 n.1 ("[A] district court abuses its

---

[7] We reach this conclusion based solely on the knowing-and-voluntary requirement and thus need not consider Swan's arguments on other plea-withdrawal

12

discretion if it denies a motion to withdraw a plea that was not knowingly and voluntarily entered."). And because an unknowing and involuntary guilty plea is void, "the plea cannot stand, and we must vacate the conviction[] that flowed from it." *Id.* at 661–62.

## Conclusion

Swan's plea was not knowing and voluntary because, during the conversation in which he decided to plead guilty, his plea counsel materially misrepresented his right to an impartial jury selected through racially nondiscriminatory means. We therefore vacate Swan's conviction and remand for the district court to allow Swan to withdraw his plea and for further proceedings.

---

factors, including factual and legal innocence. But we pause to note that to the extent that Swan's legal-innocence argument seeks broader relief than simply withdrawing his plea (he asserts that his statute of conviction is unconstitutional), we are bound to follow our recent decision in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023). *See United States v. Lira-Ramirez*, 951 F.3d 1258, 1260–61 (10th Cir. 2020) ("We must generally follow our precedents absent en banc consideration."). As Swan acknowledges, *Vincent* forecloses his position that the felon-in-possession statute is unconstitutional under *Bruen*, and he now maintains that argument solely for preservation purposes.